STATE OF VERMONT *v.* HIRAM ATKINS.

*Pleading. Indictment. Libel.*

An innuendo does not obviate the necessity of such prefatory allegations of extrinsic facts as are necessary to be considered in connection with the language of the publication in order to ascertain its sense and meaning.

The substance of the article set forth in the indictment as constituting the libel, was that E attended a political convention while his wife lay dead at home, with reflections and comments based upon this supposed fact, which, if false, is libelous, as its effect was to bring him into reproach and disgrace; but the indictment was held insufficient upon general demurrer in not averring that there was or was not a political convention held on the day alleged.

The prefatory averment alleged that the purpose and intent of the respondent was to cause it to be suspected and believed that E attended a political convention, under the circumstances set forth, but there was in the first count no innuendo explaining the libelous language of the article, and making it consistent with that averment. *Held* that the count was for this reason also insufficient, the language of the article itself not importing what is ascribed to it.

INDICTMENT charging the respondent with having on the 10th day of August, 1865, published of and concerning one Nathaniel Eaton, a libel, as stated and set forth in said indictment. To this indictment the respondent demurred generally. Demurrer overruled, and judgment that the indictment is sufficient, and exceptions by respondent. Heard at the March term, 1868, PECK, J., presiding.

The indictment set forth :

" That Hiram Atkins, of Montpelier, in the county of Washington, being a person of an envious, evil and wicked mind, and of a most malicious disposition, and wickedly, maliciously and unlawfully intending and contriving, as much as in him lay, to injure, oppress, aggrieve and vilify the good name, fame, credit and reputation of Nathaniel Eaton, of Middlesex, in the county of Washington, a good, peaceable and worthy citizen of this state, and to bring him into public scandal, hatred, infamy, contempt, ridicule and disgrace, with force and arms, at Montpelier, in the county of Washington aforesaid, heretofore, to wit, on the 10th day of August, A. D. 1865, of his great hatred, malice and ill will towards the said Nathaniel Eaton, and to cause it to be suspected and believed by the citizens of this state, that the said Nathaniel Eaton, whose wife had died on the last day of July before that time, *attended a political convention all day, while his wife was*

*lying dead in his, the said Eaton's, house;* wickedly, maliciously
and wilfully did compose and write, and cause and procure to be
composed and written, a certain false, scandalous, malicious and
defamatory libel of and concerning the said Nathaniel Eaton, con-
taining the false, scandalous, malicious and defamatory matter
following of and concerning the said Nathaniel Eaton, that is to
say: 'One other political bruiser,' (meaning the said Nathaniel
Eaton) 'we like to have forgotten—but had we done so, that face
would have haunted our dreams ever more. That one is 'Uncle
Nat. Eaton,' formerly of Calais, but now 'Mugwump' No. 2, of
Middlesex. This old political *roue* was about town all day in full
blast, notwithstanding that the corpse of his dead wife (meaning
the wife of said Eaton) was lying in his house at home. Would
it not have been more creditable to him (meaning the said Na-
thaniel Eaton) had he paid more attention to the proprieties of
life, and shown more respect for the dead? He (meaning the
said Eaton) is a man who publicly boasted that the know-nothing
party fitted him like a new boot, and in our opinion he told more
truth then than at any other time of his life. If a dead nigger had
been in his house, the old hypocrite (meaning the said Nathaniel
Eaton) would probably have been heard of sitting in his back
kitchen, clothed in sackcloth and ashes; but as it was only his wife,
(meaning the wife of the said Eaton,) what did it matter? This is
the type of the man who makes such a great *hullabaloo* over the treat-
ment of the late slaves, yet who does not have the respect which
civilization enjoins for the memory of the wife who had been a slave
to his whims and wishes, and deserves his tenderest regard and
love.' Which said scandalous, malicious and defamatory libel he,
the said Hiram Atkins, afterwards, to wit, on the same 10th day of
August, A. D. 1865, at Montpelier aforesaid, wickedly, maliciously
and unlawfully did print and publish, and then and there did
cause to be printed and published, in a certain newspaper called
the Argus and Patriot, printed and published by the said Atkins
at Montpelier, in said county of Washington, on the 10th day of
August, A. D. 1865, and did thereby then and there unlawfully,
wickedly and maliciously publish and cause to be published the
said libel, to the great damage of the said Nathaniel Eaton, and
against the peace and dignity of the state.

" And the jurors aforesaid, on their oaths aforesaid, do further
present: that Hiram Atkins, of Montpelier, in the county of
Washington, being a person of an envious, evil and wicked mind,
and of a most malicious disposition, and wickedly, maliciously and
unlawfully minding, contriving and intending, as much as in him
lay, to injure, oppress, aggrieve and vilify the good name, fame,

credit and reputation of Nathaniel Eaton, of Middlesex, in the county of Washington, a good, peaceable, honest and worthy citizen of this state, and cause .it to be suspected and believed by the citizens of this state, that the said Eaton was and had been a cruel husband, and wholly devoid of all feelings for his wife, who had then recently died, to wit, on the 31st day of July, A. D. 1865, at Middlesex aforesaid, and that the said Eaton, *on the first day of August, A. D.* 1865, *at Montpelier aforesaid, attended a political convention or meeting all day, while his wife lay dead in the house at home;* and to bring him the said Eaton into public scandal, infamy and disgrace with and amongst all the good and worthy citizens of this state, to whom he was in any wise known, with force and arms, on the 10th day of August, A. D. 1865, at Montpelier, in the county of Washington, of his great hatred, malice and ill will towards the said Nathaniel Eaton, wickedly, maliciously and unlawfully did compose, write and publish, and cause and procure to be composed, written and published, in a certain newspaper called the Argus and Patriot, printed and published by the said Hiram Atkins, at said Montpelier, on the 10th day of August, A. D. 1865, aforesaid, a certain false, scandalous, malicious and defamatory libel of and concerning the said Nathaniel Eaton, containing the false, scandalous, malicious and defamatory words and matter following, of and concerning the said Nathaniel Eaton, that is to say : ' One other political bruiser (meaning the said Nathaniel Eaton) we like to have forgotten ; but had we done so, that face would have haunted our dreams evermore. That one is ' Uncle Nat. Eaton, (meaning the said Nathaniel Eaton,) formerly of Calais, but now Mugwump No. 2, of Middlesex. This old political *roue* (meaning the said Nathaniel Eaton) was about town all day, in full blast, (meaning that the said Nathaniel Eaton was attending a political convention all day,) notwithstanding that the corpse of his dead wife (meaning the wife of the said Nathaniel Eaton, who had died the night before said convention) was lying in his house at home, (meaning at the house of the said Eaton, at Middlesex aforesaid.) Would it not have been more creditable to him (meaning the said Nathaniel Eaton) had he paid more attention to the proprieties of life, and shown more respect for the dead, (meaning the wife of the said Eaton, who had recently died as aforesaid.) He is the man who publicly boasted that the Know-Nothing party fitted him like a new boot, and in our opinion he told more truth then than at any other time of his life. If a dead nigger had been in his house, (meaning the house of the said Eaton) the old hypocrite (meaning the said Eaton) would probably have been heard of sitting in his back kitchen, clothed

in sackcloth and ashes ; but as it was only his wife, what did it, matter ? (meaning that the said Eaton had no regard for his wife, and that he cared nothing about her death, and that he had no affection for his deceased wife.) This is a type of the man who makes a great *hullabaloo* over the ill treatment of the late slaves, yet who does not have the respect civilization enjoins for the memory of the wife who had been a slave to his whims and wishes, and deserved his tenderest regard and love,' (meaning that the said Eaton had no regard or affection for his deceased wife, and that she had been a slave to his whims and wishes all her life) : which said scandalous, malicious and defamatory libel he, the said Atkins, did then and there, on the 10th day of August, A. D. 1865, at Montpelier aforesaid, unlawfully, wickedly and maliciously publish and cause to be published, in a certain newspaper called the Argus and Patriot, printed and published by the said Atkins, at said Montpelier, on the day and year last aforesaid, to the great damage, disgrace, scandal, ridicule and infamy of the said Nathaniel Eaton, and against the peace and dignity of the State."

*George M. Fisk* and *Randall & Durant*, for the defendant.

The publication as set out in the indictment is not libelous. It imputes no crime to the complainant. It imputes no official or professional impropriety to the complainant. It is not of that character of libels calculated to injure society generally like obscene publications, etc. It does not in any manner tend to blacken the memory of the dead ; nor tend to exclude the complainant from society as having an infectious disease. 2 Mass., 406 ; 2 Pick., 320 ; 12 Pick., 101 ; 7 Ohio, 190.

If the court should hold that what is said about his being around town in full blast all day while his wife lay dead at home is libelous, it is not properly set out in the indictment. The pleader in the introductory part of the indictment has attempted to enlarge the meaning of these words by saying the purpose of the publication was to have it believed that the complainant attended a " political meeting all day," etc., but the libel itself makes no allusion to any political convention, or when and where holden. Wharton's Am. C. L., 2606. He professes to set out in *hæc verba* the libel, or such part of it as he complains of, and no reference is made to any other part.

*M. E. Smilie*, state's attorney, for the state, cited, upon the point that the publication in question was an indictable libel, *Com.* v. *Clap*, 4 Mass., 163; *Colby* v. *Reynolds*, 6 Vt., 489; *Cooper* v. *Stone*, 24 Wend., 433; 3 Johns. C., 198; 1 Denio, 347. That the indictment was sufficient as drawn, 5 East, 463; 1 Rus. on Cr., 248; *Rex* v. *Evans*, 3 Stark., 35; 3 Gr. Ev., § 16; 2 Wend., 536.

The opinion of the court was delivered by

PROUT, J. This indictment is met by a demurrer. The substance of the article, so far as material to the question urged, seems to be this : that Mr. Eaton attended a political convention while his wife lay dead at home ; and it contains reflections and comments, based upon this supposed fact, which if false is libelous, as its tendency and effect is to bring him into reproach and disgrace. But the question is, whether the necessary extrinsic facts are set forth in the indictment. As to that it has been not unfrequently decided that an innuendo does not obviate the necessity of prefatory allegations of such extrinsic facts, as are often necessary to be considered in connection with the language of the publication, in order to ascertain its sense and meaning, and which must be set forth. An innuendo does not serve this purpose. It has "no other use than simply to ascertain the application of previous expressions to particular persons and things." 1 Aik., 33. In no view is it an allegation of extrinsic facts or circumstances, showing the libelous or actionable quality of the article, which is important in connection with appropriate inuuendoes, as showing a charge or conduct that is calculated to impair, in public estimation, the party aggrieved, as a man of feeling, principle and rectitude. In this indictment it will be seen, by a reference to it, that the extrinsic facts or circumstances set forth therein, and which are inserted for the purpose of showing the sense of the language of the article, are imperfectly set forth. The purpose of the publication in both counts is alleged to be, to cause it to be suspected that Mr. Eaton attended a political convention on the occasion referred to, while his wife lay dead in his own house. This is the sense and meaning of the article in the mind of the pleader,

and he makes it so by direct allusion to a political convention, real or pretended ; but it is not alleged that there was or was not a political convention held on the day alleged, or while Mrs. Eaton lay dead at home, which we think necessary to a legal, certain and technical statement of the case. Wharton, § 2605. This is more especially the case with reference to the second count, as both the prefatory averment and innuendo refer to a political convention.

The other or first count is open to criticism in another particular. The prefatory averments of this count, like the other, allege the purpose and intent of the respondent to be, to cause it to be suspected and believed, that Mr. Eaton attended a political convention under the circumstances set forth. In this count there is an omission of any innuendo explaining the libelous language of the article, and making it consistent with that averment; the language of the article of itself not importing what is ascribed to it. "About town all day in full blast," although connected with an epithet characterizing Mr. Eaton's political character, does not imply it, but only as connected with the fact or circumstance that a political convention had been held; or if such convention was not held, the fact should have been averred. In *Rex* v. *Horne*, 2 Cowper, 672, it is said, " if the terms of the writing are general, or ironical, or spoken by way of allusion or reference, although any man who reads such a writing may put the same construction upon it, it is by understanding something not expressed in direct words," and this must be set forth in the prefatory averments of the indictment and explained by innuendoes. Starkie, 422. In no other way can the allusion be rendered clear, and hence should be pointed out, as the meaning of the language is to be determined by the jury ; and " a jury cannot take cognizance of it " unless it is set forth on the record. *Dickey* v. *Andros*, 32 Vt., 55.

The judgment of the county court is reversed, and judgment that the indictment is insufficient and that it be quashed.