The State v. Elliott.

value in his ordinary occupation, nor for the reasonable value of his time which he may have lost from his business.

---

THE STATE OF KANSAS v. FRANK W. ELLIOTT.

No. 767.*   (61 Pac. 981.)

1. CRIMINAL LAW—*Libel—Information—Innuendo.* In an action for libel, where the words have the alleged slanderous meaning not by their own intrinsic force, but by reason of the existence of some extraneous fact, this fact must be averred in traversable form, and it is not sufficient to plead such fact by way of innuendo only.

2. ——— *Burden of Proof—Defense.* It is incumbent upon the state, in an action for libel, to prove every material averment of the information; the burden never shifts to the defendant. It is not necessary in such case that the defendant prove his defenses to the satisfaction of the jury; it is only incumbent upon him to present such matters as are sufficient to raise a reasonable doubt; this entitles him to an acquittal.

Appeal from Doniphan district court; WM. I. STUART, judge. Opinion filed July 11, 1900. Reversed.

---

* Affirmed by supreme court March 9, 1901.   See 62 Kan. 869, 64 Pac. 1116.—REP.

*A. A. Godard*, attorney-general, and *S. M. Brewster*, county attorney, for The State.

*G. C. Clemens*, for appellant.

The opinion of the court was delivered by

McELROY, J. : This was a prosecution for criminal libel brought in the district court of Doniphan county. The defendant was found guilty and appeals to this court. There are two grounds of error relied upon which require a reversal of the judgment.

1. That the court erred in overruling appellant's motion to quash the information for the reason that it does not state a public offense. The information charges :

"That on or about the 12th day of August, 1899, one Frank W. Elliott was the editor and publisher, in said Doniphan county, of a weekly newspaper called the Troy *Times*; that on or about the said 12th day of August, in said newspaper, the said Frank W. Elliott, in said Doniphan county and state of Kansas, with intent to expose one Albert Perry to hatred and contempt, and to deprive him, the said Albert Perry, of public confidence and social intercourse, did then and there unlawfully and wilfully and maliciously publish and circulate, and cause and procure to be published and circulated, of and concerning one Albert Perry, the following false, malicious and defamatory and libelous words, as follows : 'With Leland's brother-in-law,' meaning thereby the said Albert Perry, 'as chairman of the democratic committee,' meaning thereby the democratic central committee of Doniphan county, Kansas, 'even that party was run,' meaning the democratic party in Doniphan county, during the campaign in which the said Albert Perry was chairman of the said democratic central committee, 'pretty much as Leland directed,' meaning thereby Cyrus Leland, who was a leading republican

in said county, and meaning thereby that the said Albert Perry, who during the time referred to was chairman of the democratic central committee of the democratic party in Doniphan county, Kansas, as such chairman betrayed the trust and confidence reposed in him by the said democratic party and its central committee, and that the said Albert Perry, as such chairman, suffered and permitted said Cyrus Leland to control, in the interest of the republican party, the acts of said Albert Perry as such chairman, to the great scandal, injury and disgrace of the said Albert Perry, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

It is elementary that the innuendo cannot serve as averment, but must rest upon averments elsewhere distinctly made in traversable form.

The supreme court of Massachusetts, in *Carter v. Andrews*, 16 Pick. 6, says that whenever words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact, the fact must be averred in a traversable form, which averment is called the inducement. There must then be a colloquium averring that the slanderous words were spoken of or concerning this fact. Then the word "meaning" or "innuendo" is used to connect the matters thus introduced by averments and colloquia with the particular words laid, showing their identity, and drawing what is then the legal inference from the whole declaration, that such was, under the circumstances thus set out, the meaning of the words used.

The same rule is announced in *State v. Atkins*, 42 Vt. 252; 13 Encycl. Pl. & Pr. 88, 89; *State v. Grinstead*, post, p. 90, 61 Pac. 980.

In the above information, by way of innuendo only, are stated matters explanatory of the publication

which are necessary to be alleged by way of inducement. The offense does not appear complete from the publication itself. The language of the publication alone, without explanation, is not actionable *per se*. The facts necessary to the offense sought to be charged in the information are not well pleaded. The motion to quash should have been sustained.

2. That the court misdirected the jury in material matters of law. The court instructed the jury:

"Eighth. Before a person can be guilty of a criminal libel, he must have a malicious intent to defame the persons alleged to be libeled, and malice in a legal sense denotes the intentional doing of a wrongful act, without just cause or excuse, or the wicked intention to do an injury; but such malice may be proven by circumstances, and if you believe from the evidence in this case that the defendant was not present and did not know of the insertion in the Troy *Times* of the alleged libelous article complained of in the information, and in no manner aided, counseled or abetted in the publication of such article, then you should find the defendant not guilty."

"Thirteenth. There is no dispute in the evidence in this case but that the defendant was, at the time the libelous article was published in the said Troy *Times*, both editor and publisher of said paper. The law, therefore, presumes that such publication was by the authority of said defendant, and it is incumbent upon him to satisfy you that it was not published with his knowledge and authority, and unless he has so satisfied you, you should return a verdict of guilty in this cause."

"Nineteenth. A publisher of a newspaper is responsible for the matter in his paper, as though the same was inserted by himself or published by his express direction, unless it is shown by the evidence that he did not publish or aid or assist in such publication and did not know of the same.

"Twentieth. If you believe from the evidence that the defendant did not know of the publication of the

The State v. Elliott.

alleged libel, and did not directly direct its insertion in the Troy *Times*, yet if you believe from the evidence that he authorized his brother; John Elliott, to insert matter in said paper as he might think proper, he cannot excuse himself from the consequence of such publication by claiming that he did not specially direct such publication.

"Twenty-first. A defendant cannot relieve himself from punishment for the publication of a libel without at the earliest opportunity denying the truth thereof in said paper, and denouncing its falsity, unless he wishes to justify by proof on the trial of the truth of the charge."

These instructions are erroneous and were misleading; they were calculated to give the jury the impression that as to the defenses presented in a criminal case the burden of proof is upon the defendant. It is incumbent upon the state to prove every material averment of the information. The burden never shifts to the defendant. It is only incumbent upon the defendant to present such matter to the jury as to raise a reasonable doubt; this entitles him to an acquittal.

The court erred in giving these instructions. It was not necessary that the defendant should prove to the satisfaction of the jury that he did not participate in the publication.

The court erred in overruling the motion for a new trial.

The judgment is reversed and the cause remanded.

MAHAN, P. J., concurring.

WELLS, J. : I concur in the last section of the syllabus and in the reversal of the judgment herein on account of erroneous instructions, but dissent from the balance of this opinion.