Mb. Justice VanValkenburgh
delivered the opinion' of the court.
An affidavit is handed to the court, signed and sworn to by R. L. Campbell, Esq., attorney for the appellant, stating that “he has reason to believe and does believe that the said appellant cannot obtain justice in said cause by reason of the prejudice” of the Chief Justice and Mr. Justice Westcott of this court.
Ho motion ivas made thereon, and no explanation given of its contents or its purpose, until counsel for the appellees called attention to an act of the Legislature, chapter 3120, approved 8th March, 1879. This act provides that if any party to a suit pending in the Supreme Court, or his attorney, shall make an, affidavit before the clerk of said court that he has reason to believe and does believe that he cannot obtain justice from one or two Judges of said court -by reason of the prejudice of such Judge or Judges, then such Judge or Judges shall be disqualified to sit in said cause,” and the Judge not embraced in said affidavit shall call in Circuit Judges to sit in the place of the Judges so disqualified.
Until now it has been, as L supposed, universally conceded that the Constitution had vested the judicial power in the courts. How, it seems to be claimed that the Legislature has the power to invest a party to a suit, or his attorney, with the judicial function to determine the disqualification of the Justices.
In the case of the Trustees of the Internal Improvement Fund vs. Bailey, 10 Florida, this court denied the judicial power of the Legislature to .prescribe what the judgment of the court should be upon the question of disqualification of one or more of its members, or upon other questions then and there presented in that cause. I think the present members of the court also are of the opinion that questions of law, arising from a statement of facts, are judicial questions, and their determination belongs to the judicial department.
The only facts stated in this affidavit are, first, that affi-ant has a reason for believing; and, second, that.he does believe that the appellant cannot obtain justice by reason of the prejudice. What are the facts upon which the affi-ant renders this judicial opinion and judgment? He gives none; gives no information upon which the court or either of its members can act. He does not allege that either of the Justices is inompetent to sit in the cause, nor even that either of them has any prejudice. If it is desired that the court shall pass upon facts, establishing disqualification, let them be stated. What is- the character .of the prejudice intended by the affiant to be shown ? Is it a prejudice against *115 the party, or against the attorney, or against some other person, or a prejudice as to the law of the case, or as to the facts of the case; or a prejudice for or against other courts which may have decided this or other causes similar to this?
Unless the court is informed by some means of some fact upon which to determine something, it cannot be said that the intent of the statute has been complied with.
When facts are presented on oath to a court for its action, they should be stated in a manner so direct, positive, and unequivocal, that if they are untrue the affiant may be held accountable for swearing falsely, or, if true, they will .justify the court in taking action.
The affidavit here presented is so vague and uncertain that no court or Judge can take action upon it. It simply states an opinion or conclusion of the affiant, based upon “reasons” concealed within his own breast, the nature and character of which reasons are not disclosed.
The question of the validity of the act of the Legislature, under which this affidavit is made, is not here presented or considered.
The affidavit is entirely insufficient to warrant any action to be taken by the court or any member of it.
No order can be made.
Mb. Justice Westcott
delivered the fqllowing opinion:
Chapter 3120, of the Laws of Florida, provides “that if any party to a case pending in the Supreme Court of this State, or his attorney and counsellor at law, shall make an affidavit before the Clerk of said court that he has reason to believe, and does believe, that he cannot obtain justice from one or two of the Judges of said court, t>y reason of the prejudice of such Judge or Judges, then such Judge or Judges shall be disqualified to sit in such case, and thereupon the Judge or Judges not .embraced in such affidavit shall- call in one or two Circuit Judges, as the case may require, who, with said qualified Judge or Judges, shall constitute the court for the adjudication of such case; provided, that not more than two Judges of the Supreme Court shall be disqualified to sit in any one case under the provisions hereof.” Another section authorizes either party, by a like affidavit, to challenge the Judges of the Circuit Court thus to be called in. The attorney of the appellant in this case files an affidavit framed under this law, and in conformity to its strict letter, alleging that he has reason to believe, and does believe, that he cannot obtain justice from Chief Justice Randall and Mr. Justice Westcott by reason of the prejudice of such Justices. This affidavit is made the basis of no motion. It is called to our attention by respondents’ attorney. I will, however, treat the matter as if a motion to call in two Judges of the Circuit Court in lieu of the Justices mentioned had been made.
The respondents’ attorney has discussed the questions arising upon this motion with reference to the powers of the Legislative and Judicial Departments of the Government under the Constitution, insisting that in several respects the statute' is unconstitutional. . These questions are very interesting. If, however, this matter can be disposed of without a decision of these questions, the rule is that they should be left undetermined here.
Says Chief Justice Marshall, speaking of such constitutional questions: “If they become indispensably necessary to the case the court must meet and decide them, but if the case may be determined on other points, a just respect for the Legislature requires that the obligation of its laws should not be unnecessarily or wantonly assailed.” 2 Brock., 447; 6 N. Y., 177, 178; 4 Barb., 56; 29 Ala., 573; Cool. Con. Lim., 163.
The term “prejudice” used in this statute, accepting it in each and every of its significations, is very comprehon-sive and varied in its character. One of its significations is prejudgment or prepossession, and it may be prejudgment or prepossession as to questions of law heretofore determined by the members of this court, in their judicial capacity. To give the word this meaning, in this statute, would be to unsettle the law in its length and breadth, so far as a change in the organization of the court in cases involving like principles to those involved and decided in antecedent causes could do so. Antecedent decisions involving an expression of opinion upon questions of law by the Justices of this Court would disqualify a majority of the court in all cases where they were applicable and were cited as precedents to control our action. Stare decisis is a principle of the most conservative and protective character. It is placed by the ablest jurists of England and America second only to the positive and fixed rules of propertj', and to those elementary principles which naturally affect the liberty of the citizen. All dispositions of property, whether they be of a testamentary character, or whether they arise in the active business conflicts of life, are made with reference to the then law, as determined and fixed by the decisions of the courts. The construction given to statutes and to the Constitution become, as it were, a part of the text of the statute or organic law. To give such a construction as this to this statute would be attributing upon our part to the legislative department of the government a recklessness and stupidity in its enactment disgraceful in its character, and immensely injurious in its results, as well as a thorough disregard for all the practices and precedents of thb past. To the extent that a judge was learned in the law and was able to announce an opinion based upon his antecedent knowledge, to that extent would he be disqualified. -Giving this signification, we would have as a legislative axiom— the greater the fool, the better the judge.
The case in which this motion is made may involve important principles of commercial law heretofore determined by this court, and by the present justices -.thereof. To give this word the signification indicated, would disqualify all of the justices of this court, leaving it to the discretion of the party or his attorney to say which two of the justices of this court should not sit in his case, forcing him at the same time to take one of the disqualified justices and compelling the other disqualified judge not only to hear the case, but to take part in its decision. Not only is this true, but while every substituted judge is subjected to what is practically and in effect a peremptory challenge of like character, the remaining justice, though he may be disqualified in like manner, is made a fixture not subject to such challenge by either party. That the Legislature did contemplate that one prejudiced .justice might take part in the decision of cases, is what that department of the government has plainly said in this statute. No rule of construction can do away with the clear, plainly expressed intent of a statute in a case where that intent, however absurd it may be, appears to be the primary puropse of the enactment. In such cases it ceases* to be a question of construction. It becomes one of power alone.
We have as to this matter no general terms of varied significations, some absurd in their character, and others to some extent reasonable and proper when viewed in reference to the harmonious action and mutual respect of the several departments of government, as well as to the orderly administration of justice, according to principles sanctioned by centuries of experience and practice; but it is a clear, plain, unmistakable announcement and direction by the Legislature, that a party shall have his case tried by one of three disqualified judges, leaving that one to be determined by the party, and when he has made his selection, forcing th disqualified judge to organize his own court as *116 well as to participate in the decision of the case. In other words, prejudice under this statute can disqualify every justice and judge in the State except the one prejudiced judge whom one party may select, and he is beyond a challenge for prejudice by either party.
This, however, is not true of the word “prejudice” in this statute. This is a general term of many significations, indicating in some senses a mental condition or state, not highly censurable in its character.
The marked characteristics of one civilization or of one faith are classed as prejudices of that civilization by other and different civilizations and faiths, and this, too, independent of tile -abstract question of right and wrong. The education, the'experience, the culture of the one people may condemn the opinions and mental slate of another as prejudices, and yet in the abstract the error and the wrong, so far as it exists, may be that of the people who, assuming to themselves all the virtues known to the moral law, are yet in fact intolerant, intellectual bigots, measuring the length and breadth of their own mental and intellectual worth by leagues, and that of those of their equally deserving co-temporaries by cubits. Most civilized nations have their national faith in the matter of religious opinion and practice. The people of one nation, devoted to one religious faith, give exclusive aid to organizations professing this faith through their law making power. Taking the liberal and tolerant views and acts of the fathers of the republic as the standard by which to judge of this action, it gave evidence of opinions in the matter of religious tolerance which resulted from undue attachment founded in education and culture. There are prejudices in favor of one’s country or his church. In the view' of those who criticise with severity, the civilization of my people and of my State, I, devoted to them and to her, am in a state of prejudice as to her and her institutions. I have, as to them, a previous bent oí bias of mind in one way or another.
Leaving these genera! significations of the term “prejudice,” I consider its various meanings as applied to legal proceedings. Prejudice in the sense of a previously formed opinion upon a question of law cannot certainly be what is here intended by the Legislature. If so, the extent of a judge’s disqualification would be fixed by the amount of knowledge he has of questions of law. as they arise in the trial of a cause.
•Again, of two attorneys engaged in a cause to-day, one may display a manifest ignorance of the Rules of Practice, and of the principles of law applicable to his case; another attorney on the opposite side to him in the cause may give evidence of accurate and extended knowledge in these respects. Tomorrow, upon the calling of another case in which these attorneys are engaged, the attorney least learned in his profession challenges two of the members of this court for prejudice, (leaving the third one with the same opinion out,) in that they enter upon the consideration of his client’s cause with an unfavorable opinion as to his attainments, and are in a condition of mind which will prevent them from placing implicit confidence in his statements of facts, as well as from yielding their deliberate judgment of the law to the rule as he conceives it to be. Is this the prejudgment, the “prejudice” which the Legislature here intends?
Again, an attorney having a case upon our docket, may in the presence of the court be guilty of such manifest and gross contempt, as will justify and require his commitment. After his release, upon the calling of a case in which he is engaged, lie files an affidavit of prejudice, that prejudice being the natural, necessary and properly unfavorable opinion which each member of the court may then entertain as to his antecedent conduct. Is this the prejudice which the Legislature here intends?
Again, an attorney honestly devoted to his causes, having every confidence in his own judgment and little in that of any bodty else, may lose one or more of them. Failing in these causes and believing in his own infallibility, he assails other decisions of the court through the press, and, not confining himself to simple, fair criticism, exhausts the vocabulary of epithets in his denunciations and discussions. Not content with this, he attributes motives of a most improper character to a judge, neither giving nor having any fact to give constituting a reasonable basis for his charge. Is the legitimate, necessary, and proper opinion which the judge, who Imows no such motive prompted his action, must entertain of such conduct the prejudice which the Legislature here intends?
From what has been said, it must be evident that to give to the term “prejudice” in this statute the significations mentioned, would lead to consequences of the most absurd character. In such cases the court, to avoid 6uch conclusion, must “presume that some exception or qualification was intended by the Legislature.” 3 Mass., 639; 24 Pick., 370; Potter’s Dwar. on Stat., 202, note 19, 215; 22 Pick., 573; 12 Fla., 589.. “The consequences are to be considered, for the courts will not construe acts of parliament so as to admit of any absurd consequences.” In this statute this word is general and has many varied significations, some of which, if given, would result in such plain absurdity and mischief that we must resort to interpolation in order to avoid attributing to the Legislature sucli absurd intention.
In the time of Bracton and Fleta, a Judge might be refused for good cause, but at the common law, as administered in England and the United States for centuries, Judges and Justices could not be challenged. There were disqualifying causes, such as interest, and being of kin to the party. In respect to jurors all challenges for favor were to be determined by his affidavit to its truth, much less to his sim-where a party was required to allege a cause for challenge, was the question of the existence of the cause left to be determined by his affidavit to its truth, muhe less to his simple affidavit to his belief in its truth.
In all cases where a statute provides, in general terms, for the disqualification of a Judge for prejudice, it has been construed to mean prejudice against the party to the suit, and in every case the courts have not hesitated to give a reasonable construction to enactments of this character.
In construing such a statute, and the general provisions of the Constitution of Kentucky upon a like subject, the Court of Appeals of that State say, (2 Met., 629,) “the Legislature certainly did not intend that any cause, however trivial or unimportant, should operate to disqualify a Circuit Judge, or render it improper that lie should preside in a case; but obviously meant that such cause should be a legal and substantial one.” The Constitution of that State provided that “the General Assembly shall provide, by law, for holding Circuit Courts, when, from any cause, the Judge shall fail to attend, or, if in .attendance, cannot properly preside.” One of the questions in the case was whether what constituted such legal and substantial cause was to be tested by the common law or by the statutes of the State in force when the Constitution was adopted. The court held that under this peculiar Constitution the statutory disqualifying causes were perpetuated. At the time of the adoption of this Constitution, a statute of that State provided that all suits cognizable in any of the courts of the Commonwealth, where either of the parties shall conceive that he, she, or they will not receive a fair trial in the court where such suit is depending, owing to the interest or prejudice of any Judge, that he or she will not receive justice *117 in the court then sustaining the said suit, to petition a Circuit Judge for a change of venue, &c. The courts of that State construed the word "prejudice,” although it was of a general nature, and was used without restriction, as in our statute, to be a prejudice against the party. This I conceive was the intent of the Legislature in this statute. The affidavit filed in this case is general, and for aught that appears or is sworn to, the prejudice here intended may be the prejudgment, the prepossession of opinion which we entertain as to questions of law therein involved, resulting from investigation- and decisions in antecedent causes before this court. The intent of the Legislature being determined to be a prejudice against the party, it is within our power (sec. 12, ch. 1938, laws,) and it is our plain duty to require the affidavit authorized to be filed by this statute to state the fact that the prejudice is a prejudice against the party. In this view the affidavit here filed is insufficient, and any motion to make it the basis of action looking to the calling in of Judges of the Circuit Court must, in my opinion, be denied.