GRACE V. HOWELL, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed January 30, 1919.

1. Where an indictment charges that the defendant made the "assault "from a premeditated design to effect the death of one Thomas Howell;" that she shot off and discharged the pistol "from a premeditated design," and that she inflicted the wound from which the victim died "from a premeditated design," a motion to quash on the ground that the indictment fails to charge any premeditated intent, or that the wounds were inflicted with a premeditated intent, was properly denied.

2. In an indictment for unlawful homicide it is not necessary to describe upon what part of the body the wounds were inflicted.

3. In an indictment for such an offense it is sufficient to allege that the mortal wound was inflicted on the body of the deceased.

4. Where an application for a change of venue is based on the prejudice of the presiding judge against the defendant, no discretion is vested in the judge to hear and determine the question of whether or not he is prejudiced, and the change of venue must be granted.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment reversed.

G. A. Worley & Son, for Plaintiff in Error;

Van C. Swearingen, Attorney General, and C. O. Andrews, Assistant, for the State.

BROWNE, C. J.—Grace V. Howell was on the 14th of May, 1918, indicted in Dade County for the murder of her husband on March 29th. Motions to quash the indictment, for change of venue and for continuance were over-

ruled. The defendant was convicted of murder in the first degree with recommendation to mercy, and seeks reversal here on writ of error.  .

The first error assigned is based on the ruling of the court denying the defendant's motion to quash the indictment. This motion contained seven grounds, but the only ones discussed by the plaintiff in error are that "the indictment fails to charge any premeditated intent, or that the wounds were inflicted with a premeditated intent," and that "the indictment fails to state on what part of the body the wounds were inflicted."

We assume that the defendant used the word "intent" for "design," as that is the language of the statute.

The indictment charges that the defendant made the assault "from a premeditated design to effect the death of one Thomas Howell;" that she shot off and discharged the pistol "from a premeditated design," and that she inflicted the wound from which the victim died "from a premeditated design." As there is nothing in this contention, the motion to quash upon that ground was properly denied.

The plaintiff in error cites the case of Keech v. State, 15 Fla. 591, in support of the third ground of the motion to quash, that "the indictment fails to state upon what part of the body the wounds were inflicted." This court has since modified the rule laid down in that case and it is now sufficient to allege that the mortal wound was inflicted on the body of the deceased. See Walker v. State, 34 Fla. 167, 16 South. Rep. 80; Roberson v. State, 42 Fla. 223, 28 South. Rep. 424.

Although the other grounds of the motion to quash are not discussed by the plaintiff in error, we find that the indictment contains all the necessary allegations to charge the offense of murder in the first degree, and the motion to quash was properly denied.

The second assignment of error relates to the refusal of the court to grant the defendant's motion for a change of venue, one of the grounds of which was the prejudice of the presiding judge against the defendant. The sections of the law governing changes of venue are as follows:

"Judges of all courts in this State shall have power and it shall be their duty to grant changes of venue of all cases pending before them, civil or criminal, under the circumstances and in the manner hereinafter provided by this article." Sec. 1469, General Statutes, 1906.

"Such change shall be granted if either party in any civil case, or the defendant in any criminal case, shall make application therefor on oath stating that he fears that he will not receive a fair trial in the court where the suit is pending, on account of the prejudice of the judge of the said court against the applicant or in favor of the adverse party, or on account of the adverse party having an undue influence over the minds of the inhabitants of the county or justice's district in which the case is pending, or on account of applicant being so odious; such application shall fully and distinctly set forth the facts upon which the same is founded." Sec. 1471, Gen. Stats., 1906.

"In all applications for change of venue, except when made upon the grounds of prejudice of the presiding

judge, the adverse party shall have the right to traverse the allegations of the application, and the court shall hear the evidence produced by either party and shall decide the matter accordingly." Sec. 1474, Gen. Stats., 1906.

"Whenever it shall be made to appear to the satisfaction of the presiding judge of any of the circuit courts of this State that the venue of any cause, then pending in such court, should be changed either because a fair and impartial trial cannot be had in the county where the crime was committed, or because it is impracticable to get a qualified jury to try the case in the county where the crime was committed, or where it appears from the examination of the books of registration of the county, that there are not a sufficient number of registered voters to form a grand and petit jury, it shall be in the power and discretion of such judge to change the venue of such case, from the Circuit Court of the county where such cause is at the time pending to the Circuit Court of any other county within the same circuit." Sec. 3997, Gen. Stats., 1906.

Construing these sections together it is apparent that the provision in Section 1474 that "Such application shall fully and distinctly set forth the facts upon which the same is founded," relates to an application for a change of venue based upon the other grounds, and not when made on account of the prejudice of the judge, because where the application is made on the first grounds, Section 1474 provides for an issue being presented to the judge for determination by traversing the allegations of the application, but when made on the ground of the prejudice of the judge no traverse is permitted.

The prejudice in the community—the odium of the applicant, the impracticability of getting a qualified jury —or the registration books showing that there are not a sufficient number of qualified voters in the county— are the facts to be established by proof to the satisfaction of the judge upon issue made by the allegations in support of the motion and the traverse by the adverse party; they relate to extraneous matters, and specific conditions, the existence of which the presiding judge is called upon and is competent to determine upon the proof submitted.

An entirely different condition arises when the application is based on the mental attitude of the judge. As there can be no traverse of the allegation of his prejudice, there can be no issue presented and nothing for the judge to decide. Why should the facts in such an application be set forth if they can not be traversed?

The purpose of requiring the facts to be stated where the grounds are other than the prejudice of the judge, is that he may inquire into and judicially determine their existence or non-existence. But where his state of mind is challenged, does he need to have the facts stated to convince him as to his own state of mind? Upon the facts being stated, how would he reach a conclusion? Would he mentally resolve that the allegations are not true, and thus traverse the allegation contrary to the provisions of the statute? Or may he say, "I may be prejudiced, but the facts you allege do not establish it?" Or, on the other hand, may he say, "The facts you set forth seem to indicate that I am prejudiced, but as I know that I am not, I shall refuse the motion?" Such a process could hardly be raised to the dignity of a judicial proceeding. It seems quite clear that the provision in

the statute that "such application shall fully and distinctly set forth the facts upon which the same is founded" does not relate to an application made because of the prejudice of the judge, as no useful purpose would be served by reciting facts which if they exist the judge must know of them, and if they do not exist, no one is permitted to contradict or deny their existence.

The distinction between the allegations that may be traversed and those where no traverse is permitted, is very significant, and clearly indicates an intention on the part of the Legislature to discriminate in the procedure in the two classes of applications.

In a jurisdiction where, unlike ours, the statute requires the application for change of venue on the grounds of the prejudice of the judge, to be supported by affidavits of two "respectable" persons, it was held that the trial judge can not inquire into and determine whether the affiants are of this class, and that "respectable" will be construed to be synonymous with competent, and the judge has no discretion, but must grant the change of venue. State v. Spivey, 191 Mo. 87, 90 S. W. Rep. 81; State v. Witherspoon, 231 Mo. 706, 133 S. W. Rep. 323.

In the last case the court said: "The law does not contemplate an issue of fact upon an application for a change of venue on account of the disqualification of the judge, to be heard and determined by the judge alleged to be disqualified, and therefore the evidence offered in support of the appliaction together with the agreed statement of facts, were not properly in the case and should not have been considered. When the application is properly made and supported by affidavits as required by the statute the judge has no discretion; he

cannot sit in judgment upon the question of his own qualification, but must grant the change as applied for."

Earlier Missouri decisions were based upon a statute subsequently amended, which provided that "the prosecuting attorney may in such case offer evidence in rebuttal of that submitted in support of such application." State v. Sayers, 58 Mo. 585.

A later statute provided that a change of venue should be granted "when the defendant shall make and file an affidavit supported by affidavit of, at least, two reputable persons, not kin to, or counsel for, the defendant, that the judge of the court of which said cause is pending, will not afford him a fair trial." After this change in the law the rule became established in Missouri that where an applicant complies with its provisions the law does not contemplate an issue of fact being made and the judge has no discretion but must transfer the cause. State v. Shipman, 93 Mo. 147, 6 S. W. Rep. 97; State v. Thomas, 32 Mo. App. 159; State v. Spivey, 191 Mo. 87, 90 S. W. Rep. 81; State v. Witherspoon, 231 Mo. 706, 133 S. W. Rep. 323.

The case of State v. Thomas, *supra,* is enlightening on the contention of the State that there must be something more than the mere allegation of the prejudice of the judge, and that the facts upon which the application is based must be set out in the affidavit. In the Thomas case, the affidavits of the appellant and the two witnesses contained only the assertion of the ultimate fact that the defendant could not have a fair and impartial trial on account of the bias and prejudice of the judge, and stated no reason for their opinion, or

any facts in support thereof. The Supreme Court reversed the decision of the lower court because the trial judge refused to grant a change of venue upon such affidavits.

Corpus Juris, Vol. 16, page 203, says: "And it has been very generally held that, where the application for a change of venue is based upon the prejudice of the judge, he has no discretion to refuse it."

In Lincoln v. Territory, 8 Okla. 546, 58 Pac. Rep. 730, overruling Cox v. United States, 5 Okla. 701, 50 Pac. Rep. 175, where the contrary was held, the court said: "This would practically make him a judge in his own case, as the allegation in the affidavit is that he, the presiding judge, is biased and prejudiced against the accused. The charge is made against him personally of bias and prejudice. Now, would it be reasonable to say the identical person against whom such a charge was made would be a competent tribunal to try and decide that question? To allow a man to judge of matters in which he is personally interested is not only contrary to the true principles of all law, but is repugnant to our ideas of justice. And, it seems to us, to submit such a charge for decision to the judge against whom such prejudice was charged, would be to defeat the change of judge in every case where such prejudice actually existed; for, in the language of Judge Brewer, 'all experience teaches that, usually, he who is prejudiced against another is unconscious of it, or unwilling to admit it.'" See also Erbaugh v. People, 57 Colo. 48, 140 Pac. Rep. 188; State v. Grinstead, 10 Kan. App. 78, 61 Pac. Rep. 976; State v. Kent, 4 N. D. 577, 62 N. W. Rep. 631; Carrow v. People, 113 Ill. 550; Snelzer v. Lockhart, 97 Ind. 315; State v. Henning, 3 S. D. 492, 54

N. W. Rep. 536; Hamilton v. Territory, 1 Wyo. 131; Territory v. Kelly, 2 N. M. 292.

States holding to the contrary are Washington, Iowa, Kentucky and California, but their statutes seem to require the court to occupy the conflicting positions of witness, interested party and judge. Thus the Washington statute provides: "The application shall not be granted on the ground of excitement or prejudice other than prejudice of the judge, unless the affidavit of the defendant be supported by other evidence; nor in any case unless the judge is satisfied the ground upon which the application is made does exist."

In Iowa the statute permits a presiding judge to traverse the allegation of his prejudice, and thus judicially determine his state of mind. Before such an anomoly in jurisprudence should be sanctioned, the legislative intent should be clear and unequivocal.

The purpose of this provision of the law is protection; protection against prejudice of which the judge may be unconscious, as well as prejudice which may blind a judge to justice and prompt him to take jurisdiction for the purpose of bringing about a conviction which he may think salutary. It was in such a frame of mind that Jeffreys conducted the Bloody Assizes, and had his prejudice been asserted he would no doubt have denied it, and judicially determined that he was not.

In the case of Blackwell v. State, decided in the June, 1918, term, this court said: "Where an application for a change of venue is based on the prejudice of the judge against the defendants, no discretion is vested in the judge to hear and determine the question of whether or not he is prejudiced."

It is contended that if this construction of the law is sound, and that upon an affidavit being made of his prejudice, it is the duty of the court to grant the change of venue, a defendant might trifle with the court and bandy the case around from court to court. The results that may flow from the abuse of a statute is a matter for legislative action and not grounds for a court to refuse to give it force and effect. Any possible evil that might arise from a litigant making repeated affidavits of the prejudice of the judge can be obviated by the Legislature providing, as in some jurisdictions, that a case may be transferred only once on the grounds of the prejudice of the judge. The Congress of the United States has thus legislated to prevent such possible absue, and a similar provision is found in the laws of Oklahoma and other States.

Section 21 of the New Judicial Code of the United States effective January 1, 1912, provides for the transfer of causes on account of the personal bias or prejudice of the judge before whom the action or proceeding is to be tried or heard, provides that "no party shall be entitled in any cause to file more than one such affidavit," and to further guard against the abuse of the statute by an unscrupulous party, it further provides that "no such affidavit shall be filed unless occompanied by a certificate of counsel of record that such affidavit and application are made in good faith." This section of the Judicial Code came before the Supreme Court of the United States in *Ex Parte* American Steel Barrel Co., 230 U. S. 35, 33 Sup. Ct. Rep. 1007, but the court stated that it was "not decided whether under Sec. 21, Judicial Code, any affidavit of bias and prejudice is sufficient or whether the judge can pass upon its suffi-

ciency." On the trial of the cause, District Judge CHAT-
FIELD, denied that he had "any personal bias or preju-
dice," but said he felt "that the intent of Sec. 21 is to
cause a transfer of the case, without reference to the
merits of the charge of bias."

In the instant cause the defendant went further than
merely stating that the judge was prejudiced against
her, and set out what she based her belief upon, and
among other things said that several years ago, before
the presiding judge had gone upon the bench and was
a practicing attorney, she heard him express himself
as being "very desirous of obtaining some evidence
against the petitioner that would place her in the pen-
itentiary; and expressed his feelings in a way to show
that he was very bitter against this petitioner," and that
he had "expressed himself against this petitioner in very
strong measures." If the judge made these statements
they seem to indicate that when made he was prejudiced
against her, and as the law expressly forbids any tra-
verse of these allegations, they must be accepted at their
faec value.

How did he get rid of her charge of prejudice? Did
he mentally traverse her allegations, and if so, is it pos-
sible that the prohibition in the case means there shall
be no traverse of record, but that they may be traversed
in the mind of the judge? It may be contended that the
judge, instead of traversing her statements, admitted
them, but decided he could nevertheless give her a fair
and impartial trial. It is just this that the law intends
to prevent. It is frequently within the power of a pre-
siding judge to so conduct a trial as to cause a ver-
dict to be rendered in accord with his views, and yet
avoid making any reversible error. On this subject, it

has been well said, "By expressions of countenance, by tone of voice, by gesture—in a multitude of ways—a prejudiced judge may unwittingly suffer his feeling against the prisoner to so express.itself in conduct that the bias of the magistrate passes into the minds of the jury, thus depriving the accused of a fair trial before an impartial tribunal." State v. Kent, 4 N. D. 577, 62 N. W. Rep. 631.

It is only in the rarest instances, however, that we find power so exercised, and never consciously, but always as the result of a bias or prejudice of which the judge himself is not conscious. It is from this insidious influence, that the law seeks to protect litigants, and to take from the judge the distasteful task of deciding an issue fraught with such dire consequences to a person whose life may be forfeited, if the judge should err in deciding on his own state of mind. As was well said in the case of State v. Grinstead, 10 Kan. App. 78, 61 Pac. Rep. 976: "He may have believed that he could act without bias or prejudice in the trial, but it would be an experiment dangerous to the rights of the defendant to permit him to make the effort." That was a case of criminal libel only; in the instant case the court was experimenting with human life.

In the case of State v. Grinstead, *supra*, three persons made affidavits that they were acquainted with the trial judge, had frequently been in his company and talked with him about the publication which was the subject of the criminal libel for which the defendant was being tried, and that "they never heard any word or saw any act of Judge Stuart showing any prejudice or resentment against the defendant; and that, from their acquaintance with Judge Stuart and their knowledge of

his character and disposition, they believe he is able to determine whether he has any prejudice or not against the defendant; and, for the same reason, they believe the defendant can have a fair trial before him." The judge also filed a statement in which he said, among other things, that he has "no ill will or prejudice against defendant on any account whatever," and he denied the petition for a change of venue. This was held to be reversible error.

In the case of State v. Kent, *supra*, the court in construing a statute which provided that if the accused made an affidavit that he can not have an impartial trial by reason of the bias or prejudice of the presiding judge, the judge of such court "may" call any other judge to preside in the trial, held that the word "may" should be construed as "must" in accordance with the rule laid down by Sutherland in his work on Statutory Construction, Section 462, that permissive words are "peremptory when used to clothe a public officer with power to do an act which ought to be done for the sake of justice, or which concerns the public interest, or the rights of third persons." In its discussion the court said: "In the light of the rule which the foregoing authorities recognize—a rule thoroughly settled—we will proceed to construe the statute in question. For whose benefit was it enacted? Obviously, for the sole benefit of those accused of crime, that they might be protected against even the unconscious leaning of a biased judge in favor of the prosecution. * * * When this prejudice exists the law intends that another judge shall try the case. * * * From this proposition there flows a corollary that, on the presentation of an affidavit stating such a bias, the right of the accused to have another judge called in to

try the case is absolute.  If not, then the judge so attacked for prejudice sits in judgment on the question of own (sic) bias.  It is true that no property interests of his own are involved.  Neither is his life or his liberty at stake."

It seems clear that the court erred in refusing to grant the change of venue on the grounds of the prejudice of the presiding judge.

The third assignment of error is based upon the denial of the defendant's motion for a continuance.  As the same state of facts upon which this motion was based will not exist at a subsequent trial, it is not necessary to discuss that assignment.

The fourth, fifth, sigth, eighteentth, nineteenth and twentieth assignments of error attack all the proceedings, orders and rulings of the court subsequent to the refusal of the court to grant the change of venue, and assigns all such orders and rulings as error.  These assignments are disposed of by the reversal of the cause, because of the error in refusing to grant the change of venue.

The other assignments of error relate to the admissibility of testimony.  Some of the questions asked the defendant on cross-examination, and the testimony introduced by the State to impeach her because of her replies to these questions, appear to have been improper.

While the admission of this testimony is assigned as error, and discussed in the brief, the record shows that either there were no objections to the questions, or no motions to strike, or exceptions to the rulings of the court thereon, except some general objections such as "I

want it to appear in the record that I am excepting and objecting to each and every one of these questions."

After both sides had announced that they "rested" the record shows that "the defendant thereupon fell to the floor and remained lying on the floor while the jury was excused and left the room." On the following day, Dr. Benton was permitted to testify that he was in the court room when this occurred, and made an examination of her and found no abnormal condition; and compared her condition to that of "a shouting Methodist or a Holy Roler;" that she had not fainted, but that "the spell was self-induced for sympathy."

It is true that when Dr. Benton was recalled, the defendant interposed an objection to the introduction of "any evidence at this time," and also because it was "absolutely irrelevant and immaterial." This was before the witness had testified to anything except that he was in the court room when the defendant fell to the floor. A trial court has a large discretion in permitting the introduction of evidence relevant to the issue after the taking of testimony has been closed by both parties, and so far as the objection relates to Dr. Benton's testifying at that stage of the proceeding, there was no error. What he testified to turned out to be irrelevant and immaterial and tended to prejudice the jury against her, but as there was no motion to strike it, no error can be predicated upon it.

The judgment is reversed.

Taylor and Ellis, J. J., concur.

WHITFIELD, J., specially concurs.

WEST, J., dissents.

WHITFIELD, J., *specially concurring.*—The application for change of venue on the ground of the prejudice of the judge, "fully and·distinctly sets forth the facts upon which the same is founded," and a change of venue should have been granted.

WEST, J.—*dissenting.*—According to the majority opinion in this case, the controlling statute is Section 1471, General Statutes of 1906. This statute is set out in the opinion, and is there construed as if it contained the exception which I insert in italics, making the section read as follows: Such change shall be granted if either party in any civil case, or the defendant in any criminal case, shall make application therefor on oath stating that he fears that he will not receive a fair trial in the court where the suit is pending, on account of the prejudice of the judge of said court against the applicant or in favor of the adverse party, or on account of the adverse party having an undue influence over the minds of the inhabitants of the county or justice's district in which the case is pending, or on account of applicant being so odious; such application, *except when based upon the ground that the defendant fears that he will not receive a fair trial in the court where the suit is pending, on account of the prejudice of the judge of said court against the applicant or in favor of the adverse party,* shall fully and distinctly set forth the facts upon which the same is founded.

It is said that this interpretation is made necessary because of other statutes on the subject which are quoted in the opinion, and especially Section 1474, which provides that in all applications for a change of venue, except when made upon the ground of prejudice of the judge, the adverse party may traverse the allegations of the application and the court shall hear evidence and decide the questions presented. But this, to my mind, is not sufficient to warrant a court in writing into the statute an exception which the Legislature did not place there. It is true that when such application is founded upon the alleged prejudice of the judge its allegations may not be traversed and evidence taken and submitted to and passed upon by such judge upon the question of whether he himself is prejudiced against the applicant, but is that a sufficient reason for holding that the Legislature when it said that "such application *shall fully and distinctly set forth the facts* upon which the same is founded," (italics my own) did not mean just that, but did mean that when such application is made upon any of the grounds enumerated in the statute, *except one,* it shall fully and distinctly set forth the facts upon which it is founded.

What is the result of the interpretation adopted by the court? It is that hereafter all that will be required of a defendant will be that he shall present his application on oath stating that he fears that he will not receive a fair trial because of the prejudice of the judge against him. How it happens that the judge is prejudiced against him, what the facts are upon which he bases his conclusion that the judge is prejudiced, how he obtained the information upon which he bases his conclusion and whether from credible sources or otherwise, or whether

his application is based upon anything at all except his bare assertion of the mental attitude of the judge are matters which he is under no duty to disclose, but, under the rule established in this case, upon the filing of such application supported by the uncorroborated oath of the applicant, asserting the bare conclusion that the judge is prejudiced against him the power of the court to deal with the case, except to transfer it to some other court, is terminated.

The term "prejudice of the judge" is comprehensive and may mean a great variety of things. See the opinion of Judge WESTCOTT in the case of Conn v. Chadwick, 17 Fla. 428, dealing with a question similar to this in which various meanings of the term are suggested. In that case the right of two members of this court to sit in a case pending here was challenged upon the ground of prejudice. In speaking of the meaning of the word "prejudice" used in the statute then in force and under which the affidavit was filed, among other things Judge WESTCOTT said: "The term 'prejudice' used in this statute, accepting it in each and every of its significations, is very comprehensive and varied in its character. One of its significations is prejudgment or prepossession, and it may be prejudgment or prepossession as to questions of law heretofore determined by the members of this court, in their judicial capacity." And further: "This is a general term of many significations, indicating in some senses a mental condition or state, not highly censurable in its character." This being true, to hold that the Legislature meant to say by the statute now under consideration that each defendant in a criminal case shall have the right, upon his bare assertion on oath that the judge is prejudiced against him, to have the case trans-

ferred elsewhere for trial, without making known any
of the facts upon which he predicates his assertion, is, it
seems to me, going further than the Legislature intended
to go when it enacted this statute, and the Legislature
is as much the guardian of the rights and liberties of
the people as are the courts. So says the Supreme Court
of the United States in the case of Missouri, K. & T. R.
Co. of Texas v. May, 194 U. S. 267, 24 Sup. Ct. Rep. 638.

But, says the majority opinion, if no right is given
the adverse party in a criminal prosecution, the State,
to traverse the allegations of the application when it is
based upon the prejudice of the judge there can be no
reason for "fully and distinctly" setting forth the facts
upon which it is founded as required by the statute. But
is this necessarily the case? To illustrate, suppose, as
suggested by Judge Westcott, in the opinion above re-
ferred to, that it should appear upon a setting out of the
facts "fully and distinctly" as the statute requires, that
the alleged prejudice of the judge was due to his having
decided a question of law and rendered a decision in
some case involving a similar question, contrary to that
contended for by the applicant in the case then under
consideration, or, suppose in setting out the facts it
should be demonstrated that the alleged "prejudice of
the judge" was not in fact "against the applicant or in
favor of the adverse party," would the application still
be held sufficient because the "prejudice of the judge"
is alleged, although in setting out the facts upon which
such alleged prejudice is based, it appears that the charge
is wholly without any foundation in fact? Other simi-
lar illustrations readily occur to the mind, but these are
sufficient to show that there is good reason for requir-
ing an applicant for a change of venue to set out in his

application the facts upon which he predicates his assertion, that the judge is prejudiced against him, in a case where such application is founded upon that ground just as he must do when his application is founded upon any of the other grounds enumerated in the statute. It prevents an applicant giving to the word "prejudice" such definition as may suit his whim or be to his peculiar advantage; it requires the exercise of good faith by an applicant and prevents a trifling with the courts with the incidents of delay and public expense; and it can result in no possible harm or disadvantage to an applicant because if he is in possession of sufficient facts to warrant him in making oath that the judge is prejudiced against him requiring him to set them out "fully and distinctly" places no unreasonable burden upon him. The desideratum in this and all other judicial investigations should be the truth and whatever may be the grounds therefor no harm can possibly result from requiring that an applicant for a change of venue shall deal with candor and in good faith with the court to which his application is submitted.

The point that I seek to make here is noticed in a concurring opinion by Judge TAYLOR in the case of Purvis Frink, 55 Fla. 715, 46 South. Rep. 171. He said: "The application for change of venue states in general terms the legal conclusion that the judge is *prejudiced,* but when the facts are stated that comprise this alleged *prejudice* they do not even tend to show any *prejudice* on the judge's part either for or against any of the parties to the cause."

This case illustrates the danger and to my mind the unsoundness of the construction placed upon this statute by the majority opinion. The defense was insanity, the

homicide being admitted. Counsel for the appellant in the brief filed in her behalf in this court asserts that she "is, always was, and always will be, a moral imbecile." He further says that "it will be remembered that the defendant was at the time of the homicide, at the time of her incarceration, and at all times thereafter, up to and including all of the trial in a mental condition that incapacitated her to the extent that she could not advise with counsel intelligently and could not remember names and could not remember what she had done or what she was doing." And so, according to the theory of the applicant with the construction of this statute which the majority opinion adopts, we have a situation by which one who is admittedly morally and mentally irresponsible may, because of a bare opinion which such an one entertains to the effect that the judge before whom she may be tried is prejudiced against her, by simply making oath that the judge is so prejudiced, without reciting any facts or giving any reason or grounds for such conclusion, set at naught the power of the State to try such person and render nugatory the law of the State with the infraction of which such defendant stands charged, because there is no limit to the number of changes of venue that may be granted, and conceivably such a person would feel himself or herself amply warranted in making oath that each of the trial judges in the State having jurisdiction of the offense charged was prejudiced against him or her as the case might be.

That the Legislature intended no such thing, as this seems to me to be clear, and to place this interpretation upon this statute is, to my mind, wholly unwarranted and unnecessary. It should be read just as it stands upon the books. So read it requires that applications

for changes of venue upon any of the grounds enumerated "shall fully and distinctly set forth the facts upon which the same is founded." This court has held that it is not allowable to interpret what has no need of interpretation. Fine v. Moran, 74 Fla. 417, and cases cited.

Because of the foregoing considerations and being of the opinion that the application in this case does not so "fully and distinctly" set forth the facts as to make it appear that the trial court erred in denying the application, I respectfully dissent.