THE STATE v. JOHN WITHERSPOON, Appellant.

Division Two, December 27, 1910.

1. **ARRAIGNMENT.** An arraignment of defendant upon a criminal charge is a prerequisite to a legal trial; but where the record shows that defendant was arraigned and "for his plea says he is not guilty of the charge in said indictment," it shows a sufficient arraignment.

2. **CHANGE OF VENUE: Disqualification of Judge.** Where the application for a change of venue, alleging the disqualification of the judge, is not supported by the oath of defendant and the affidavit of two or more reputable persons, it cannot be granted. The right to a change of venue is statutory, and it was competent for the General Assembly to prescribe the terms upon which it shall be granted; and when those terms are met, the judge has no discretion to refuse it, but no power to allow it until they are.

3. ——: ——: **Agreed Statement: Issue of Fact: No Affidavit or Oath.** Defendant's motion to the judge to disqualify himself to sit in the forgery case, alleging that he had been of counsel in a civil suit based upon the deed of trust defendant

State v. Witherspoon.

is charged in the indictment with having rorged, and that by reason thereof he was disqualified from hearing and determining the cause, signed only by counsel, but not verified by affidavit, nor even signed by defendant, but supported by an agreed statement of facts and by evidence introduced by defendant in support thereof, should be overruled. The law does not contemplate an issue of fact upon an application for a change of venue on account of the disqualification of the judge, to be heard and determined by the judge alleged to be disqualified; and, therefore, the evidence offered in support of the motion, together with the agreed statement of facts, are not properly in the case and cannot be considered; and the motion cannot be considered, because not supported by the requisite oath and affidavits.

4. INDICTMENT: Forgery: Variance: Deed of Trust. Variances between the deed of trust set out in the indictment and the instrument introduced in evidence, which amount to mere clerical inaccuracies, are immaterial and do not affect the merits.

5. FORGERY: Evidence: Deed of Trust: Check for Money. Where defendant is charged to have forged a deed of trust on land, it is not an essential element of the crime charged, that the forger obtained the money upon the forged deed; but as the sole purpose and object of the forgery was to secure the money, it was competent for the State to prove, as a part of the transaction, the manner in which the money was obtained, and for that purpose to introduce in evidence the check by which it was obtained, signed by the same name by which the deed of trust was forged—and that independent of any question of handwriting.

6. ———: ———: Handwriting: Comparison: Expert. Where defendant did not object to witness, admittedly an expert, testifying that the handwriting of the name on the check by which the money was drawn out of the bank was the same as that in which the same name was written on the deed of trust, defendant cannot object on appeal that the witness was permitted to give his opinion on that point.

7. WITNESS: Wife: Incompetency: Testimony Stricken Out: Instruction Necessary. A wife cannot testify against her husband who is the defendant in a criminal case; and where she states she was married to him, her testimony not only should upon motion be stricken out, but the court should give an instruction asked telling the jury to disregard her testimony. And it matters not that after she testifies she was married to him, she also testifies that she was not his wife, because she had learned after marriage that he had previously been married and had not been divorced.

State v. Witherspoon.

8. ————: **Incompetency: Voir Dire Examination.** It is a wise and judicious course of procedure, when a question is raised as to the competency of a witness, and the circumstances of the case are such that the *voir dire* examination of the witness may have an influence on the minds of the jury upon the issues before them, to exclude the jury from the court room pending such examination.

9. **REMARKS OF ATTORNEY: Not Preserved in Motion.** Reference by the attorneys for the State to the fact that defendant's wife had testified against him, whose testimony had been stricken out, although excepted to at the time, cannot be reviewed on appeal unless made a ground of the motion for a new trial.

10. **FORGERY: Deed of Trust.** The forgery of a deed of trust on real estate is a forgery of "a deed or other instrument" under Sec. 4636, R. S. 1909, and therefore is forgery in the first degree.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton,* Judge.

REVERSED AND REMANDED.

*C. J. Henry* and *D. C. Chastain* for appellant.

(1)   Judge Denton was disqualified from hearing this case. The issue was the forgery of the deed of trust, and the record shows that M. Goss, whose name was forged to the mortgage, brought in 1899 a suit against the Walton Trust Company to cancel the mortgage on the grounds of forgery. Judge Denton was one of the attorneys for the Walton Trust Company in the case, and upon the trial the mortgage was cancelled as a forgery. It certainly appears that he should not sit in the trial of a cause wherein the forgery of the identical instrument was in issue. The issue of forgery has once been decided adversely to his firm and that being true it could not be said that he was unprejudiced or unintrested in this cause. R. S. 1899, sec. 2594. (2) The court erred in the admission of testimony on the part of the State in the following instances: (a) The alleged forged deed of trust should not have been admitted in evidence, for the reason that the same is

pleaded by tenor in the indictment and the State was thereby held to strict proof thereon. There are a great number of words spelled differently in the deed as pleaded and as offered in evidence. These differences constitute a variance and violate the rule of strict proof. 19 Cyc. 1397; 1 Bishop on Crim. Proc. (3 Ed.), sec. 562; Vol. 2, Ib., sec. 398; State v. Fitzgerald, 20 Mo. App. 408; State v. Smith, 31 Mo. 120; State v. Fay, 65 Mo. 490; State v. Chamberlain, 75 Mo. 382. The case of Bennett v. State, supra, involves many of the same variances complained of and is on all fours with this case. In addition to the above complained variances, in the acknowledgment to the same the date appears as 12, while in the indictment the same appears as 12th; further, in the one appears the word "Missouri" while the other has "Mo.," and in one appears at the place for the notary's seal, "LS," while in the other the same is "John R. Hales, Notary Public Bates County, Missouri." While it is recognized that the acknowledgment is not a necessary part of the instrument, yet being on the same instrument on a question of the identity of the same, the acknowledgment is material as a mark of identification. (b) Under the common law rules this check was not sufficiently identified and Walton was not a competent witness as to it. State v. Clinton, 67 Mo. 385; State v. Thompson, 132 Mo. 321. If admissible at all it became so under Sec. 4679, R. S. 1899, which permits an examination and comparison with an instrument admitted to be genuine or shown to the satisfaction of the judge to be genuine. This statute being in derogation of the common law is to be strictly construed. Bank v. Huffman, 74 Mo. App. 203. The statute does not contemplate that an instrument, the genuineness of which is involved in the case in issue, may be used as a standard of comparison. Sankey v. Cook, 82 Iowa 125. (3) The court should not have allowed the witness Mrs. Cook to be sworn and testify. Counsel for the State knew she was the

wife of the defendant and that she had testified to that
fact at the previous trial, and in the presence of the
State's counsel objection was made to her taking the
stand, for it was a delicate attempt on the State's
part to prejudice the jury by showing that defendant
had married the witness under the name of Cook. The
evidence of the witness bears this out and shows the
purpose of the State. And the court erred in there-
after refusing to instruct the jury not to consider any
testimony she gave and in refusing to withdraw the
same from the consideration of the jury. R. S. 1899,
sec. 2637; State v. Willis, 119 Mo. 485. (4) A deed of
trust in Missouri is recognized as a security for a debt
and not of the same class or dignity as a deed to real
property. A deed of trust is not *ejusdem generis* with
a deed to real property and hence is not included in the
term "other instrument," which instruments must be
of the same general class and nature as a deed to real
property State v. Schuchman, 133 Mo. 111; State v.
South, 136 Mo. 673; State ex rel. v. Press, 159 Mo. 466;
State v. Carpenter, 164 Mo. 588; State v. Gilmore, 98
Mo. 213; Dooley v. Greening, 201 Mo. 354; Ex parte
Neet, 157 Mo. 527; Shirk v. People, 11 N. E. (Ill.) 68.

*Elliott W. Major*, Attorney-General, and *Charles
G. Revelle*, Assistant Attorney-General, for the State.

(1) The only way by which a judge may be dis-
qualified from sitting in the trial of a cause is by
compliance with the provisions of Secs. 5198 and 5199,
R. S. 1909, and then only because of the existence of
one or more of the causes mentioned therein. State v.
Moore, 121 Mo. 521. A consideration of the statutory
causes entitling an accused to a change of venue makes
it manifest that appellant was not entitled to the
change unless he filed a verified application in proper
form, together with the affidavits of at least two repu-
table persons. State v. Brownfield, 83 Mo. 451; State
v. Neiderer, 94 Mo. 81; State v. Richardson, 194 Mo.

336; State v. Spivey, 191 Mo. 87. Appellant's motion cannot be treated as his own application to disqualify the judge, but the most that can be said of it is that it is a mere suggestion addressed to the discretion of the trial court to the effect that he voluntarily disqualify himself. This suggestion the court did not see fit to adopt, and with the exercise of that discretion this court will not interfere. State v. Gilmore, 110 Mo. 1. (2) In the case at bar, by overruling the demurrer to the evidence, and by giving and refusing the instructions it did, and by overruling the motion for new trial, which again directly submitted this question to the trial court for decision, the court found and affirmatively declared that the alleged variance was not material or prejudicial, and this court will adhere to the action of the trial court on this finding. State v. Kerrigan, 210 Mo. 371; State v. Decker, 217 Mo. 321; State v. Jackson, 221 Mo. 478; State v. Barker, 64 Mo. 285; State v. Smith, 80 Mo. 520. (3) The check had been identified as the one upon which the money deposited by appellant had been paid by the bank, and had been admitted without objections or exceptions. The signatures on the deed of trust and note had been positively identified and proven to be that of defendant. The magistrate who took appellant's acknowledgment to the deed of trust had testified positively that appellant had in his presence signed the name "M. Goss" to both the note and deed of trust. Under such circumstances it was perfectly proper to compare the signature attached to the check with appellant's signature to the deed of trust and note "which had been proven to the satisfaction of the judge to be genuine." R. S. 1909, sec. 6382; State v. Tompkins, 71 Mo. 613; State v. Stark, 202 Mo. 210; State v. Thompson, 141 Mo. 408; Cook v. Strother, 100 Mo. App. 622. (4) To say that a deed of trust in the form of the one forged by this appellant does not in any way affect or change any right or interest in real estate would be taking an unpardonable liberty with

the language, and completely nullifying a statutory enactment. State v. Jackson, 221 Mo. 478. The terms "deed or other instrument" are used in both the first and second divisions of the section, and this court has held, when applying the second subdivision, that such terms include a deed of trust. State v. Tompkins, 71 Mo. 613; State v. Sharpless, 212 Mo. 176.

KENNISH, J.—On the 12th day of June, 1900, the grand jury of Bates county, Missouri, returned into open court an indictment jointly charging defendant and Jesse Roe and Cap Neff, alias Jones, with the crime of forgery in the first degree, the subject of the forgery being a deed of trust for $870 on certain real estate located in Bates county, Missouri, and owned by M. Goss, whose act and deed the forged instrument purported to be.

Owing to the absence of the defendant and the inability of the State to apprehend him, the cause was not taken up until the regular May term, 1909, of the circuit court of that county, at which time the defendant was arraigned and a plea of not guilty entered. Thereafter, to-wit, at the regular October term, 1909, defendant filed a motion praying for a change of venue, in which he sought to disqualify the regular circuit judge, Hon. C. A. Denton, alleging therein that he had been of counsel in a certain civil action in which the genuineness of the deed of trust alleged to have been forged by defendant was in issue. A statement of facts relative to the matters set out in the motion was agreed upon by counsel for the State and defendant, and the motion was thereupon overruled. Defendant was then put upon his trial, which resulted in a verdict of guilty and the assessment of punishment at imprisonment in the penitentiary for a term of ten years. After motions for a new trial and in arrest were filed and overruled, defendant was sentenced pursuant to the verdict, and an appeal to this court was granted.

On the part of the State the testimony tended to prove that during the month of March, 1898, Mr. J. W. Jameson was acting in the capacity of agent and making loans at Rich Hill, Missouri, for the Walton Trust Company, a banking institution, which had its principal business office at Butler. At that time appellant, who was unknown to Jameson, appeared in person and made application to Jameson for a loan of $800, stating that he was M. Goss; that he lived at Merwin, and was the owner of certain designated real estate on which he would give a deed of trust to secure the loan he was seeking. Mr. Jameson communicated with the trust company relative to making the loan and gave the officers of that institution a description of the premises offered as security, whereupon he was authorized to make the loan and was furnished with the note and deed of trust for M. Goss's execution. After the papers had been received, appellant appeared at Rich Hill and with Mr. Jameson went before John R. Hales, a notary public of that county, and being introduced to the notary by Mr. Jameson as M. Goss, appellant, in that name and in the presence of the notary and Mr. Jameson, signed and executed the note and deed of trust for the sum of $870, money borrowed and the cost and commission on the loan. The sum of $848.25 was then delivered to appellant, who deposited it in the bank at Rich Hill in the name of M. Goss and afterwards checked it out under the same name. Defendant then disappeared and was not again seen in the county until after his arrest, which was about eleven years later.

The discovery that the signature of M. Goss was not genuine was made about one year after the instrument was executed, and after M. Goss, the true owner of the land, was notified by the trust company to make payment of the accrued interest. Appellant's true name was John Witherspoon and his home was in Kansas. M. Goss, whose name the appellant forged, re-

sided in Merwin, and was in fact the lawful owner of the premises on which the deed of trust was given. He had never executed a deed of trust on the land in question, and had given neither appellant nor any other person any authority to do so, or to use his name for any such purpose.

The appellant was identified by two witnesses as the person who executed the forged note and deed of trust, and was also proven by other witnesses to have been in Rich Hill and vicinity about the time the instruments were forged.

A few days before applying to Mr. Jameson for the loan appellant made an application to Mr. Duval of Butler, who was loaning money, representing to him that he was M. Goss and the owner of the land in question. Mr. Duval informed him that he would lend him the money on the land, but since he was not personally known to him, he would send the note and deed of trust to Mr. Catron at Merwin, near where the land was located, and where M. Goss, the true owner, was known, and that appellant could go there, execute the instruments and get the money. Appellant did not go to Merwin as directed and Mr. Duval heard nothing further from him.

Appellant was a witness in his own behalf. He denied signing the trust deed and testified that on the 11th and 12th days of March, 1898, he was one mile west of Ponca City, Oklahoma. The deposition of Oscar Taylor of said Ponca City, was read to the jury, in which he testified that on the 11th day of March, 1898, the defendant was working for him on his farm one mile west of said Ponca City.

The State in rebuttal offered evidence tending to impeach witness Taylor by assailing his reputation for truth and veracity.

I. Appellant's first assignment of error is that the record fails to show an arraignment of the defendant.

The arraignment of a defendant upon a criminal charge is so indispensable a prerequisite to a legal trial under our law that, as appellant states, it is unnecessary to cite authorities in support of the proposition. However, the weakness of appellant's contention upon this point lies in the fact that the record plainly shows that the defendant was arraigned and "for his plea says he is not guilty of the charge in said indictment."

II. Error is assigned in the refusal of the judge of the court, upon defendant's motion, to disqualify himself to sit in the case. The motion alleged that the judge of that court had been of counsel in a civil suit based upon the trust deed which the defendant was charged with forging in the indictment in this cause and that by reason thereof he was disqualified from hearing and determining the case. The motion was signed by counsel for defendant, but was not verified, nor even signed, by the defendant. What purports to be an agreed statement of facts appears in the record in support of the motion, and evidence was also introduced by the defendant for the same purpose.

It is provided by section 5198, Revised Statutes 1909, that the judge of any court in which an indictment or criminal prosecution is pending shall be deemed incompetent to hear and try the cause in either of the cases therein enumerated, one of which is the following: "Third, when the judge is in anywise interested or prejudiced or shall have been counsel in the cause."

The next succeeding section, to-wit, section 5199, provides that "whenever, in any criminal cause, the defendant shall make application under oath, and supported by the affidavit of two or more reputable persons, not of kin or counsel for defendant, to the truth of the allegations in such application for a change of venue, for any of the reasons stated in the next preced-

ing section, it shall be lawful for the judge to hear and determine such application,'' etc.

The right to a change of venue is statutory and it is competent for the Legislature to provide the terms upon which it shall be granted. [State v. Sanders, 106 Mo. 188; State ex rel. v. Wofford, 119 Mo. 408.] And ''the only way by which a judge may be disqualified from sitting in the trial of a cause is by reason of the existence of some one or more of the causes mentioned by section 4174, Revised Statutes 1889, and by a compliance with its provisions.'' [State v. Moore, 121 Mo. l. c. 521.]

There is not a semblance of compliance with the requirements of the statute governing the right to a change of venue in this case. The law does not contemplate an issue of fact upon an application for a change of venue on account of the disqualification of the judge, to be heard and determined by the judge alleged to be disqualified, and therefore the evidence offered in support of the application, together with the agreed statement of facts, were not properly in the case. and should not have been considered. When the application is properly made and supported by affidavit as required by the statute the judge has no discretion; he cannot sit in judgment upon the question of his own qualification, but must grant the change as applied for. [State v. Spivey, 191 Mo. 87, and cases cited.] For the reasons stated we hold the court was not in error in overruling the motion for a change of venue.

III. Appellant next assigns error in the action of the court in overruling his application for a continuance. The application was based upon the ground of absent witnesses and failed to conform to the requirements of the statute governing continuances in at least four essential particulars, and for that reason it was properly refused by the court. [State v. Richardson, 194 Mo. l. c. 336; State v. Blitz, 171 Mo. 530; State v. Cummings, 189 Mo. 626.]

IV.   The indictment charges the defendant with the forgery of a certain deed of trust, which instrument is set out in the indictment according to its tenor. When the State offered the deed of trust in evidence it was objected to by the defendant upon the ground of variance.   The objection was overruled and appellant now assigns error in such ruling.

A number of variances between the instrument as set out in the indictment and the instrument introduced in evidence have been pointed out by appellant, but they are all mere clerical inaccuracies, and so far as having any effect upon the merits of the case they are of the most immaterial character.   As an example of these variances attention is called by appellant to the fact that in the description of the land the words and figures "eighty (80) acres" are used in one instrument and the words and figures "80 acres" in the other; the words "party of the first part" in the one and the corresponding words "first party" in the other; the word "fails" in the one instrument and the corresponding word "failed" in the other, and so on.

To reverse a case and grant a new trial upon such clerical mistakes—mistakes which could not have prejudiced the defendant in his substantial rights, would prove a great hindrance to the enforcement of the law and would not be promotive of the ends of justice.   The statute forbidding an acquittal on the ground of a variance not deemed material to the merits of the defense, was enacted to cover just such a case as we have under consideration, and we rule that the court did not err in admitting the deed in evidence.   [R. S. 1909, sec. 5114; State v. Burlingame, 146 Mo. 1. c. 225; State v. Jackson, 90 Mo. 1. c. 158; State v. Flora, 109 Mo. 1. c. 296; State v. Decker, 217 Mo. 1. c. 321-322; State v. Jackson, 221 Mo. 478.]

V.   It had been shown in evidence that after the forgery of the trust deed and note and after the pro-

ceeds of the loan had been placed in the bank at Rich Hill to the credit of "M. Goss," the name which the forger had falsely assumed, a check was drawn on the bank at Rich Hill for the full amount thus placed on deposit, except the sum of $1.25. This check had been cashed or deposited for collection in a bank at Olathe, Kansas, and following the course of commercial paper had passed through other banks, finally reaching the bank at Rich Hill upon which it was drawn and was there paid.

Walton was a witness for the State, and qualified as an expert on handwriting. Over the objection of the defendant he was permitted to give his opinion that the same person who executed the deed of trust also signed the name "M. Goss" to the check. The check was then introduced in evidence over defendant's objection and the questions are now presented as to whether the court, in permitting Walton to give his opinion after making the comparison, and then in admitting the check in evidence, committed reversible error.

It was not an essential element of the crime charged that the forger obtained the money upon the forged trust deed, but as the sole purpose and object of the forgery was to secure the money, we are of the opinion that independent of any question of handwriting it was comptent for the State to prove as a part of the transaction the manner in which the money was obtained, and for that purpose to introduce in evidence the check on which the money was paid, signed by the same name in which the deed was forged.

In the case of State v. Soper, 148 Mo. 217, a letter signed in the name of the defendant was found at the scene of the crime and was introduced in evidence without proof that it was his handwriting. On error assigned it was said by this court: "In such circumstances, to require proof of defendant's handwriting before reading the letters in evidence would be to dis-

regard and fly in the face of the most obvious and rea-
sonable inferences drawn from closely surrounding
facts.''

That the signatures ''M. Goss''.to the deed of trust
and the check were forged was not disputed at the
trial, and it is self-evident that the person, whether the
defendant or another, who signed the forged name to
the deed of trust also signed the same name to the
check and thereby secured the money, the very object
for which the forgery of the deed was committed.
These facts were a part of the same transaction and
were so closely related to each other that we think it
was comptent for the State to introduce the check in
evidence to be considered by the jury as a circumstance
in the case.

We shall next consider the question whether re-
versible error was committed by the court in permitting
the witness Walton to give in evidence, over the de-
fendant's objection, his opinion that the signature to
the trust deed and the signature to the check were in
the handwriting of the same person.

There are three recognized modes of proving a
disputed handwriting in this State; first, where the
witness testifies that he was present and witnessed the
act; second, where the witness knows the handwriting
of the person alleged to have written the writing in dis-
pute, and testifies from such knowledge; and, third, by
expert testimony as provided by section 6382, Revised
Statutes 1909, where the witness is authorized to give
his opinion as to the identity of the handwriting in dis-
pute with any writing proved to the satisfaction of the
judge to be genuine. Neither of the first two modes
requires expert testimony, but both require antecedent
knowledge of the subject on the part of the witness.

Walton had no knowledge to qualify him as a wit-
ness under either of the first two modes, but he did
qualify as an expert on handwriting and gave in evi-
dence his opinion as to the identity of the handwriting

based upon a comparison of the signature of the check with the signature of the deed of trust, the latter being the handwriting in dispute. This character of evidence, the proper foundation being laid, is expressly authorized by the statute.

The objection made and renewed to this expert testimony was as follows:

"By Mr. Chastain: Defendant objects to it, for the reason that the witness hasn't qualified as an expert in this case; and has never seen M. Goss or anybody else sign this name 'M. Goss,' but is simply judging from the appearance of these two hands as to whether they are the same, and the jury are just as good judges of that ultimate fact; and we further object for the reason that this exhibit here, check on the Farmers & Merchants Bank, is not in evidence, and isn't competent for any purpose in this case."

It is apparent that the objection thus made, so far as the handwriting is concerned, was limited to the qualification of Walton as a witness to prove the disputed handwriting under one of the first two modes, and that it did not go to his testimony as an expert under the third mode, namely, that the writing with which the disputed writing was compared had not been proved to be genuine.

It is well settled that objections must be specific and call the attention of the court directly to the ground upon which the objection is made, and it is also settled that appellant will not be permitted to broaden the scope of his objection on appeal beyond that made in the trial court. [State v. Johnson, 76 Mo. 121; State v. Gonce, 87 Mo. 627; Kinlen v. Railroad, 216 Mo. 145; Russell v. Glasser, 93 Mo. 353; Griveaud v. Railroad, 33 Mo. App. 458.]

As the defendant did not make his objection to the testimony of Walton in the trial court upon the ground that the writing used as a standard of comparison had not been proven to the satisfaction of the court to be

genuine, he cannot be heard to object on that ground in this court.

VI.  It was brought out by defendant on the cross-examination of Walton that the latter had proceeded against two men, Rowe and Nipp, as having been implicated in the forgery of the trust deed with the defendant, Witherspoon.  No reference to this fact had been made by the State in his examination in chief.  On redirect examination Walton was asked why he proceeded against these men and explained that it was because he had evidence that Nipp was a partner of Witherspoon.  As the defendant had gone into this subject on cross-examination it was clearly competent for the witness to explain on redirect examination why he did proceed against those persons, and the defendant has no just ground of complaint.

VII.  It was entirely competent for the State to prove by Walton the efforts which had been made to locate the defendant after the discovery of the crime and the defendant's concealment under an assumed name, and in proving the admissions of the defendant which were competent evidence in the case, we are not aware of any principle of law which would preclude the State from showing when and where such admissions were made.  [12 Cyc. 395; 1 Wigmore on Evidence, sec. 276; State v. McLaughlin, 149 Mo. 19; State v. Harrold, 38 Mo. 496.]

VIII.  Appellant complains of the ruling of the court in permitting the wife of the defendant to testify as a witness on the part of the State, and of the failure of the court, upon defendant's request, to instruct the jury that they should not consider the testimony of such witness.

Mrs. Cook was sworn as a witness for the State, and counsel for defendant immediately objected, and

reminded the court that on a former trial the defend-
ant claimed that this witness was his wife, and ob-
jected to the matter being brought before the jury.
The court answered that it could not take cognizance of
the relationship until it was shown. Counsel then ob-
jected at length on the ground that the witness had
testified at a former trial that she was the wife of the
defendant, and that she was being placed upon the wit-
ness stand by the State for the purpose of showing that
the defendant had married her under the name of Cook,
and thus to prejudice the jury against the defendant.
Counsel for defendant then asked the witness if she
was the wife of the defendant, and she answered she
was not. She was then examined by counsel for the
State, and testified that defendant had represented to
her that his name was Cook and had married her under
that name, but that she was not his wife; she was asked
for an explanation of that fact and answered, "Well, I
found out after he had deserted me that he had a living
wife that he had never been divorced from." Upon ob-
jection by the defendant the court ordered the answer
quoted stricken out. Mrs. Cook was then asked by
counsel for the State if she knew the defendant's hand-
writing, and defendant objected to "any testimony on
the part of this woman because of the fact that she
has stated she was married to this defendant." The
court sustained this objection. Counsel for the State
continued his examination of the witness as to her
competency, and counsel for the defendant made the
following objection and motion: "I object to these
questions; we now move that all the testimony of the
witness be stricken out and the jury admonished not
to consider her presence in the matter, for the reason
that she is shown to have been the wife of the defend-
ant." This request was denied by the court and the
defendant excepted.

At the close of all the evidence the defendant re-
quested the court to instruct the jury upon certain

questions of law, one of which was "to instruct the jury that they cannot take into consideration in arriving at a verdict the presence of the defendant's wife upon the witness stand, or any testimony she may have given or any statements she may have made relative to the defendant;" but the court failed to give such an instruction.

In the argument to the jury special counsel for the State said: "A little woman was brought up here by the name of Cook and offered as a witness and objected to because she was a wife of this man. She protested that she wasn't his wife; that he had married her under the name of Cook." The defendant objected to the language quoted for the reason that it was outside of the record and improper argument. The court overruled the objection, stating that there was evidence of that character and the defendant excepted.

It should be noted in passing that while the defendant properly objected and excepted at the time to the remarks made by counsel for the State in his argument to the jury, he has not preserved his objection in the motion for a new trial, and therefore this objection need not be further considered. It is referred to merely for the purpose of showing the use that was made of the testimony of the wife on her examination as to her competency as a witness in the case.

At common law the husband and wife were not competent witnesses for or against each other in a criminal proceeding, except in the case of a prosecution of one for a criminal injury to the other, in which case the injured spouse was competent as a witness for the State or for the defendant. This rule of the common law is still in force in this State, with this exception that by statute, at the option of the husband or wife on trial, the other may be a witness on his or her behalf. [R. S. 1909, sec. 5242; State v. Kodat, 158 Mo. 125; State v. Willis, 119 Mo. 485; State v. Evans, 138 Mo. 118.]

No citation of authorities is necessary in support of the well-recognized principle of law that the competency of a witness is a question for the court and not for the jury, and in this case the court did find and rule that the witness was incompetent.

When in the course of a trial a question is raised as to the competency of a witness and the circumstances of the case are such that the *voir dire* examination of the witness by the court may have an influence on the minds of the jury upon the issues before them, this court has commended it as a wise and judicious course of procedure that the jury be retired from the courtroom pending such examination. [Stetzler v. Railroad, 210 Mo. 1. c. 709.]

The rule as to the proper course to be taken when the incompetency of a witness is disclosed in his or her examination is stated in 1 Wigmore on Evidence, sec. 485, as follows: "After the witness has been sworn the progress of his direct examination or cross-examination may disclose his incapacity and then he may be stopped and his preceding testimony ordered expunged." The rule just stated doubtless has reference to the testimony given by the witness bearing upon the issues of the cause, but it should apply with equal force to testimony given by the witness on an examination as to his competency in the presence of the jury when the testimony is of such character as might reasonably be considered to have an influence upon the minds of the jury as to the issues of the case on trial.

The testimony given by Mrs. Cook cannot be considered otherwise than as being most damaging and prejudicial to the defendant. That it was so considered and made use of is shown by the reference made thereto in the argument by special counsel for the State. And as all of the evidence given by the witness was upon the issue of her competency alone, and therefore addressed to the court, and not for the consideration of the jury, the court should have directed the jury not to

consider such testimony, as requested by the defendant. This request having been refused by the court the defendant was clearly entitled to an instruction, which he requested the court to give, withdrawing such evidence from the jury.

It cannot be doubted that the testimony of Mrs. Cook, under the circumstances of this case, was most harmful and prejudicial to the defendant, and we are constrained to hold that after the court had determined that she was incompetent as a witness in the case by reason of being the wife of the defendant on trial, reversible error was committed in not directing the jury that they should not take into consideration such testimony in arriving at their verdict.

X.   It is contended that the court erred in giving instruction numbered 1, for the reason that it submits to the jury the law on forgery in the first degree, and that the forgery of a trust deed is not included within the language of the statute defining that offense.

The statute upon which this prosecution is bottomed is section 4636, Revised Statutes 1909. By that section it is provided that "every person who shall forge, counterfeit or falsely alter . . . first, any will of real or personal property, or any deed or other instrument being or purporting to be the act of another, by which any right or interest in real property shall be or purport to be transferred, or in any way changed or affected . . . or, fourth, any certificate or indorsement of the filing or recording any such will, deed or other instrument, which by law may be recorded, . . . with intent to defraud, shall, on conviction, be adjudged guilty of forgery in the first degree."

It is urged by appellant that the words "deed or other instrument" as used in the statute do not include such an instrument as a deed of trust, and many authorities are cited as supporting that proposition. We shall not enter upon a consideration of the conten-

tion thus advanced as to the proper construction of those words in determining whether or not they are broad enough to include such an instrument as the deed in controversy, for the reason that we think the question has been practically settled by a former decision of this court. In case of State v. Tompkins, 71 Mo. 613, it appears that the defendant was prosecuted and convicted under the section of the statute upon which the indictment is based in this case. The particular offense charged in that case was the forgery of a certificate of a recorder showing the filing and recording of a deed of trust, and it was held by this court that the indictment was properly based upon what is now said section 4636. If the forgery of a certificate of the filing and recording of ''such deed or other instrument'' included such certificate on a deed of trust it necessarily follows that the statute also covers and includes the forgery of the deed of trust itself upon which such certificate was indorsed.

Other alleged errors are assigned in appellant's brief which have been duly considered, but as they do not contain prejudicial error, and in view of the disposition made of this case, we do not deem it necessary to give them special consideration in this opinion.

The evidence of defendant's guilt is strong and convincing, but because of the error heretofore indicated, the judgment is reversed and the cause remanded for a new trial.

*Gantt, P. J.*, concurs; *Burgess, J.*, deceased since the submission of this cause.