STATE OF MISSOURI, Respondent, v. JOHN O'-KELLEY and W. D. FITCH, Appellants.

Springfield Court of Appeals, June 9, 1913.

1. CRIMINAL LAW: Bill of Exceptions: Documentary Evidence. Where documentary evidence has been offered and the bill of exceptions calls for same, by saying "Clerk will here copy same," it is not sufficient that he certifies it as filed. The clerk should actually copy and certify the evidence referred to.

2. ——: ——: Omissions Regarded as Supplied. Where both parties concede the contents of the county court records, which should have been but are not copied in the transcript, and no question is raised as to same, the appellate court will not require an amendment, but will treat the record as being copied in the bill of exceptions and as having the legal effect conceded by both parties.

3. INTOXICATING LIQUORS: Local Option: Sale by Druggist on Physician's Prescription. Under Sec. 5781, R. S. 1909,

druggists may sell intoxicating liquors on written prescriptions issued by a regularly registered and practicing physician, even in counties where the Local Option Law is in force.

4. ———: **Physician's Prescription: Who May Sell Under.** Sec. 5781, R. S. 1909, providing that a druggist, proprietor of a drug store or pharmacist may sell intoxicating liquors on a physician's prescription, furnishes protection to only a registered pharmacist, or assistant pharmacist or to one having in his employ such a person for the purpose of compounding physician's prescriptions.

5. ———: ———: **Requisites of.** A physician's prescription calling for intoxicating liquors, signed "E. S., M. D. Date 4—15," is not such a prescription as the law requires.

6. **CRIMINAL LAW: Arraignment: Plea: Record.** Where the record shows that both parties announced "ready for trial;" and after the jury was sworn the information was read and prior to the introduction of any evidence counsel for defendants said: "We plead not guilty;" the fact that the record does not show that the defendants were either formally arraigned or a waiver thereof and a plea entered before the jury was empaneled and sworn, does not constitute reversible error in a trial for a misdemeanor. (Per STURGIS, J. ROBERTSON, P. J., concurs; FARRINGTON, J., dissents.)

Appeal from Dade County Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Howard Ragsdale* and *J. O. Patterson* for appellants.

(1) The court erred in excluding from the evidence the physician's written prescription. Sec. 5781, R. S. 1909, provides that a druggist may sell intoxicating liquor on the prescription of a regularly registered and practicing physician. The prescription must reasonably and substantially comply with the statute. State v. Clevenger, 25 Mo. App. 655; State v. Hammock, 93 Mo. App. 521. (2) Druggists may sell intoxicating liquors on written prescriptions issued by practicing physicians even in counties where the Local

Option Law has been adopted. State v. Bevans, 52 Mo. App. 130; Ex parte Swann, 96 Mo. 44; State v. Moore, 107 Mo. 78; State v. Russell, 99 Mo. App. 375; State v. Bartlett, 147 Mo. App. 1. c. 133. (3) Where a licensed merchant keeps and sells drugs and has an arrangement with a registered pharmacist to fill or superintend the filling of all prescriptions, which he does, though he at times practices medicine to a limited extent, such merchant is a druggist within the meaning of the statute. State v Steele, 84 Mo App. 316. (4) The court erred in refusing to grant defendants a new trial upon their motion and showing that there had been no arraignment or waiver of the same and that the record failed to disclose any arraignment or waiver. The arraignment of the accused on a criminal charge is an indispensable prerequisite to a legal trial. State v. Witherspoon, 231 Mo. 706; State v. Moss, 164 Mo. App. 379.

*L. A. Wetzel* for respondent.

(1) Sec. 5781, R. S. 1909, which provides that a druggist, proprietor of a drug store or pharmacist may sell intoxicating liquor on the written prescription of a regularly registered and practicing physician, applies only to a duly registered pharmacist, an assistant to a registered pharmacist and to a druggist who keeps regularly and constantly in his employ a duly registered pharmacist. State v. Goff, 66 Mo. App. 491; State v. Back, 99 Mo. App. 34; State v. Russell, 99 Mo. App. 373; State v. Hammack, 93 Mo. App. 521; State v. Lucas, 94 Mo. App. 120; State v. Workman, 75 Mo. App. 454; State v. Quinn, 170 Mo. 176; State v. Steele, 84 Mo. App. 316; State v. Rafter, 62 Mo. App. 101; State v. Bevans, 52 Mo. App. 130; State v. Moore, 107 Mo. 78. (2) Under Sec. 5764, R. S. 1909, a druggist is prohibited from compounding or dispensing the prescriptions of physicians unless he had in his employ

such registered pharmacist or he was such himself. State v. Chipp, 121 Mo. App. 560; State v. Jordan, 87 Mo. App. 420; State v. Shanks, 98 Mo. App. 138; State v. Clinkenbeard, 142 Mo. App. 155. (3) When liquor is sold on the prescription of a physician it must substantially correspond with and fill all the requirements of the statute. State v. Hammack, 93 Mo. App. 526. (4) The formal arraignment of a defendant upon a criminal charge has been dispensed with in this State. The announcement to the court and jury that defendants plead "not guilty" was in fact entering a plea was a waiver of the error in not formally arraigning defendants before trial was commenced and having proceeded without objecting to the error in not reswearing the jury waives the error. State v. Braunschweig, 36 Mo. 397; State v. Grate, 68 Mo. 22; State v. Sanders, 53 Mo. 234; State v. Weeden, 133 Mo. 80. (5) When defendant announces himself ready for trial he in effect enters a plea and the failure of the record to contain a formal statement on that point would be a mere irregularity, for which, no other reasons appearing, judgment would not be set aside. Spicer v. People, 11 Ill. App. (Bradw.) 294.

STURGIS, J.—At the outset of this case it is necessary to observe that the clerk in copying and certifying the bill of exceptions as part of the record herein has failed to insert where called for certain documentary evidence offered in the case. It is not sufficient that the clerk merely certify the copy of the bill of exceptions as filed in his office, but wherever documentary evidence has been offered and there is a call for the same in the bill of exceptions by saying therein, "Clerk will here copy same," or equivalent words, care should be taken by the clerk to follow such directions and to actually copy and insert the documentary evidence referred to.

However, as both plaintiff and defendants have filed briefs in this court and argued the case orally, and both sides concede the contents of the county court records, which should have been but are not copied into the transcript, and no question is raised as to the same, we will not require the clerk to amend his transcript but will treat such record as being copied in the bill and as showing and having the legal effect conceded here by both parties.

The defendants were tried jointly and both convicted of selling intoxicating liquors in Dade county, Missouri, in violation of the Local Option Law adopted and in force in that county. No error is predicated on the information, verdict or judgment. It is conceded that the Local Option Law had been legally adopted and was in force in Dade county at the time of the alleged offense. The errors complained of are such as occurred during the progress of the trial.

The facts show that the defendants were at, and prior to, the date of the alleged offense partners in the business of running a drug store at the town of Everton. Their stock of drugs, other than the kind delivered in barrels and kegs, seems to have been limited. One of the defendants said he could not say whether as much as ten barrels of beer per week were delivered to them or not but thought they received as much as five barrels. One of the defendants also admitted that he had been twice convicted of selling intoxicants in violation of the law and had once plead guilty to allowing intoxicating liquors to be drunk on his premises. There was much evidence showing that defendants had the reputation of being persistent violators of the liquor laws of the State. These facts are stated in explanation of the seemingly heavy penalty of a fine of three hundred dollars and ten months in the county jail assessed against each defendant by the verdict of the jury.

As to the particular offense charged in the information, one Joe Linley, a boy under age, testified that in August, 1912, he went to defendants' place of business and solicited defendant O'Kelley to sell him a quart of whiskey. O'Kelley told him that he must first get a prescription. He says defendant Fitch was also present at this transaction although this is denied by said defendant. There was also present a certain physician, Dr. E. Spyers, a man about seventy-five years old, who, defendants say, was regularly employed by them as a pharmacist and who stayed about the store but who had little, if any, practice as a physician other than that incidentally growing out of defendants' business. The witness Linley did not know this doctor or that he was a doctor, and says that he must have been told by one of the defendants, whom he says were the only persons present other than himself and the doctor, where and how to get the prescription. The witness, as well as the others present, seems to have regarded the matter of getting the prescription as a mere formality and he could not remember much about it or as to its contents or whether it was ever in his possession. He seemed surprised that he should be asked if he was sick at the time or had represented himself as being sick. The condition of his health was of little importance to either him or the doctor. The witness had evidently diagnosed his own case and prescribed exactly what was needed as a necessary remedy, to-wit, one quart of whiskey. It was a simple remedy and needed no directions as to the manner of taking. One of the defendants promptly sold the whiskey and collected the money.

The witness said this transaction was in August or possibly in July, 1912. The defendants offered in evidence as justifying this sale of whiskey what they termed a prescription, which is as follows: "Take this to O'Kelley & Fitch, Everton, Missouri. For Joe Linley, R. Spts. Fermenti Qy., as a necessary remedy.

E. S., M.D. No. ——, Date 4——15." The court excluded this evidence and this is assigned as error.

That druggists may sell intoxicating liquors on written prescriptions issued by "a regularly registered and practicing physician" as provided by section 5781, Revised Statutes 1909, even in counties where the Local Option Law is in force, is no longer debatable. [Ex parte Swann, 96 Mo. 44, 9 S. W. 10; State v. Moore, 107 Mo. 78, 16 S. W. 937; State v. Russell, 99 Mo. App. 373, 375, 73 S. W. 297; State v. Bartlett, 147 Mo. App. 133, 125 S. W. 839.]

The statute in question, section 5781, limits the right to sell intoxicants on a physician's prescription to "a druggist, proprietor of a drug store or pharmacist." The proprietor of a store dealing in drugs and medicines may be either a druggist within the druggist act of which section 5781 is a part, or merely a merchant and licensed as such. To come within the druggist act, so as to be allowed to sell intoxicants on physicians' prescriptions, he must be a registered pharmacist or assistant pharmacist or have such a person in his employ for the purpose of compounding physicians' prescriptions. [State v. Jordan, 87 Mo. App. 420; State v. Workman, 75 Mo. App. 454; State v. Goff, 66 Mo. App. 491, 495; State v. Quinn, 170 Mo. 176, 67 S. W. 974, 70 S. W. 1117.]

The statute last cited provides that: "It shall be unlawful for any person not licensed as a pharmacist or assistant pharmacist within the meaning of this chapter to compound, dispense or sell at retail any drug—upon the prescription of a physician or otherwise, or to compound physicians' prescriptions except as an aid to or under the supervision of a person licensed as a pharmacist under this chapter."

The defendants were licensed as merchants and there is no claim that either of them were registered pharmacists or assistant pharmacists nor was Dr. Spyers such at the time the liquor in question was sold.

A registered and practicing physician may become a registered pharmacist but is not such unless complying with the laws relating to licensing pharmacists. It therefore follows that defendants were not within the class of persons exempted from the provisions of the Local Option Law in selling intoxicants on a physicians' prescription. The court also correctly excluded the prescription offered in evidence for the reason that it did not comply with the law in being dated and signed. It was not such a prescription as the law requires. [R. S. 1909, section 5781; State v. Hammack, 93 Mo. App. 521, 526.]

The most serious question presented for our consideration is the assignment of error that the record in this case does not show any arraignment or waiver thereof by the defendant or that any plea was entered prior to the impaneling of the jury. The record shows that: "The above entitled cause coming on for trial before the Hon. B. G. Thurman, Judge of the Twenty-sixth Judicial Circuit of the State of Missouri, and the jury, and both sides announcing *ready for trial* the following proceedings were had, to-wit." The plaintiff appeared by Edwin Freize, prosecuting attorney, and S. A. Payne. The defendants appeared by Howard Ragsdale and J. O. Patterson. A jury was sworn to try the case. The information was read to the jury by the prosecuting attorney, who thereupon said: "Gentlemen, we expect the proof to show the facts as alleged in this information." The court thereupon addressed the defendants and their attorney, Mr. Ragsdale, said: "No statement at this time except we plead not guilty." The State thereupon put in its evidence and the witnesses were cross-examined by defendants' attorneys. The defendants were both sworn and testified as witnesses in their own behalf and were examined and cross-examined by the respective attorneys. The defendants made numerous objections throughout the trial, some of which were sustained

and others overruled, to which exceptions were saved. The defendants also saved exceptions to the giving of the instructions by the court. After the verdict of the jury was returned, the defendants filed their motion for a new trial and excepted to the action of the court in overruling the same. The defendants also filed their motion in arrest of judgment and excepted to the court's action in overruling that motion. The defendants perfected their appeal in the usual manner, obtained leave to file bill of exceptions and had the same allowed and filed in due time. The first intimation that defendants gave to the court that they were objecting or raising any question to the court proceeding with the trial without any arraignment or plea being entered is in the motion for new trial. The question for our determination is whether in this state of the record this case must be reversed and remanded for the sole reason that the record does not show in so many words that the defendants were formally arraigned or that formality waived and a plea entered before the jury was impaneled and sworn. In view of the provisions of section 5115, Revised Statutes of Missouri, 1909, relating to criminal procedure, wherein our statute declares that, "No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected—nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," were this an original proposition we would have no hesitation in answering the same in the negative.

To hold that under the record in this case the "defects and imperfections" complained of "does tend to the prejudice of the substantial rights of the defendant upon the merits" is against all reason. If the law is, as we boast, the perfection of reason, then mere form must give way to substance. To see to it that

173 Mo. App. 12

every substantial right of the defendant in a criminal case should be safeguarded and that he should be afforded an absolutely fair trial so far as is possible is the duty of every court. It matters not as to the nature of the offense or that the evidence is so overwhelming as to defendant's guilt that there seems no reasonable possibility that the verdict ever can be other than guilty, yet, if anything has occurred or been omitted in the way of a fair and orderly trial according to the forms of law that in any way might have prejudiced any substantial right of the defendant, the court should set aside the verdict and grant a new trial; for the defendant is entitled to every reasonable doubt. Granting that this rule applies to trials for misdemeanors as well as felonies, and judged by this high standard of care for the rights of the defendant in a criminal trial, yet we cannot see in what way defendants in this case have been deprived of any right whatever. The defendants were present in court with their attorneys and evidence. There are only two pleas to the merits that can be entered to a criminal charge— guilty or not guilty. A plea of guilty confesses the truth of the charge, throws the defendant on the mercy of the court and dispenses with a trial, as there is then nothing to try. A plea of not guilty is a denial of the charge and is equivalent to a demand for trial; and so the law is that if a prisoner when asked for his plea stands mute and "in all cases where he does not confess the charge to be true," a plea of not guilty is entered for him and a trial is had. [R. S. 1909, section 5165; Thomas v. State, 6 Mo. 457; State v. Andrews, 27 Mo. 267; State v. King, 74 Mo. 612.]

Everyone knows that in the modern criminal practice, unless the defendant raises some preliminary question or files some special or dilatory plea, the only question to be determined is whether the defendant will plead guilty or stand trial. Everything short of a plea of guilty, which is an express waiver of a trial, is by

statute and practice taken as a plea of not guilty which simply means that the defendant will stand trial. A trial on the merits is a necessary consequence of a failure to plead guilty.

In this case the defendants were given the last opportunity to plead guilty by the court calling the case for trial. They are not complaining of any lack of opportunity to do that. The record shows that when the case was called in regular order both parties announced *ready for trial.* Under our practice the State would so announce first; then in turn the defendants would say ready for trial. Trial of what? That announcement can and does have but one meaning. It is certainly not a plea of guilty; and by our statute and practice everything else is to be taken as a plea of not guilty. Defendants' announcement that they are ready for trial can be nothing less than a declaration that they are not guilty and a challenge to the State to prove the charge. The issue is joined; the trial is to determine that issue. Suppose the defendants had said not guilty instead of ready for trial. Would the meaning or effect have been any different? They merely anticipated the result of saying not guilty and announce that they were ready for that result. Had they answered not guilty no one would have questioned the sufficiency of that manner of joining the issue for it has long since been settled that the matter of formal arraignment and entering a plea is not a matter of such vital importance that it may not be, and as we all know constantly is, waived in the most informal manner. [State v. Grate, 68 Mo. 22, 27.]

In State v. Braunschweig, 36 Mo. 397, 398, the court said: "Much of the common law solemnity that was formerly used in the formal arraignment of those who stood indicted for crime is now dispensed with. There were reasons for an adherence to them which do not now exist. It was at one time necessary

to ask him how he would be tried; but as the right to trial by battle never obtained with us, and the law has provided that every such issue shall be submitted to a jury of the country, as the exclusive triers of the fact, that question would be entirely meaningless. Our law does not demand that he shall formally and explicitly plead not guilty; if he requires a trial, or does not confess the indictment to be true, it is the duty of the court to enter a plea of not guilty, and proceed in the same manner as if he had formally pleaded. [2 R. C. 1855, 5 p. 1181.] The defendant was present with his counsel when the jury was impaneled, waived the reading of the indictment, a plea of not guilty was entered of record, and we do not see how he can be injuriously affected because the arraignment was not made in a solemn, formal manner."

Also in State v. Weeden, 133 Mo. 70, 79 (34 S. W. 473), the court said: ' "To arraign is nothing else but to call the prisoner to the bar of the court to answer the matter charged upon him in the indictment.' [4 Black. Com. 322; Goodin v. State, 16 Ohio St. 344.] No technical arraignment, such as requiring the prisoner to hold up his hand, the reading over the indictment to him and asking him whether he be guilty or not guilty was necessary. The arraignment as shown by the record was a substantial compliance with the law and even if it were not, as the record also shows that defendant pleaded 'not guilty' to the indictment, he thereby waived formal arraignment."

Nor are we without authority in these views. There is much reason and therefore good law in the holding of the courts of Illinois on this question: "It is also urged that the defendant was put upon trial without entering his plea. It has been held that this is error even in case of a misdemeanor. [Hasking v. People, 84 Ill. 87; Gould v. People, 89 Ill. 216.] But if this were the only point in the case we should be inclined to hold upon the fact as shown by this record,

State v. O'Kelley.

that when defendant announced himself *ready for trial*, he in effect entered a plea, and that the failure of the record to contain a formal statement on that point would be a mere irregularity for which, no other reasons appearing, the judgment would not be set aside. In practice, it is not usual, even in prosecutions for the gravest offenses, to require a formal arraignment and plea, as was the ancient practice; the plea being *entered orally by counsel* and this has been sanctioned by the Supreme Court." [Fitzpatrick v. People, etc., 98 Ill. 259.]

"Where defendant announces himself *ready for trial* he in effect enters a plea and the failure of the record to contain a formal statement on that point would be a mere irregularity, for which no other reasons appearing, judgment would not be set aside." [Spicer v. People, 11 Ill. App. (Bradw.) 294.]

The record here shows that after announcing ready for trial the jury was then sworn but we know that under our practice the defendants had exercised their right to "scratch" the jury preparatory to the trial. When the jury was sworn the information was read and before any evidence was introduced the defendants announced that "they plead not guilty."

In State v. Weber, 22 Mo. 321, it was held that where no plea was entered until after both jury and witnesses were sworn that the plea might then be entered and that "the formal arraignment and entering of a plea of not guilty and the reswearing of the jury put the matter beyond cavil." The court also held that the reswearing of the witnesses would have been a mere formality and was not such error as required a reversal. Why then is the reswearing of the jury any less a mere formality? While the jury was in that case resworn after the plea was entered and the court said that such action "put the matter beyond cavil," we have every reason to believe that had the jury not been resworn the court would have held the same way.

In State v. Molloy, 31 Fed. 20, the late Justice BREWER, than whom this country has produced few greater jurists, in commenting on the law and practice in Missouri on this question of failure to show arraignment and plea of a defendant said: "It is laid down in the old law books that three objects are to be subserved: (1) The identification of the defendant; (2) giving him information of the particular offense charged against him for which he is to be tried; and (3) to receive from him the plea which he makes to that charge. Now in the case, as tried, it is perfectly evident that the defendant knew exactly the offense charged against him; that he was identified; and that he denied the charge and went to trial upon that denial. Indeed, he went on the witness stand himself, and there denied it. It may seem something of an anomaly to say that proceedings may be such that in the trial court there is no evidence of prejudicial error when the record transferred to an appellate court may disclose such error. . . . If it be true, as I think must be apparent to any one, that the failure to formally arraign the defendant in this case was not a matter which tended to his prejudice, that by that failure he was not deprived of a single substantial right, that he was not put to trial without full notice of that for which he was to be tried, that he was not caught by any surprise or in any other way, it would, as Chief Justice HENRY well says, seem to be 'like trifling with justice' to disturb the solemn verdict of the jury, and send the case to a new jury to review the same facts on another trial."

We also commend what is said in Steils v. State, 124 Pac. Rep. (Okla.) 76, as follows: "In this case counsel for appellant rely upon a purely technical defense, and manifested great zeal and ability in the presentation of the questions relied upon. It is unfortunate for counsel that the days of a purely technical defense, unless based upon a substantial right, have passed and gone, never to return to this State. But

counsel did not show wherein his client had been deprived of a single substantial right in the trial of this cause, and the testimony overwhelmingly proved that the · appellant was guilty." [See also 'Bateman v. State, 1 South 172, 64 Miss. 233.]

In considering this question some force should also be given to the rule that the same strictness is not required in trials for misdemeanors as in trials for felonies, and what may constitute reversible error in the latter · may not be such in the former.

We have not reached our conclusions in this case without reading and considering the cases of State v. Witherspoon, 231 Mo. 706, 133 S. W. 323; State v. Moss, 164 Mo. App. 379; 144 S. W. 1109; State v. Montgomery, 63 Mo. 296; State v. Saunders, 53 Mo. 234; State v. Mikel, 125 Mo. App. 287, 102 S. W. 19; State v. Sharpe, 119 Mo. App. 386, 95 S. W. 298; State v. West, 84 Mo. 440; and being cognizant of the fact that there is a long line of cases, almost too numerous to mention, holding that the record in a criminal case must show that the defendant was formally arraigned or that he waived formal arraignment and entered his plea. We are also mindful that the decisions of the Supreme Court on this or any other question are binding on this court. Were the facts of this case the same as the facts in any case decided by the Supreme Court we would be required to follow such decisions. We confess, however, that we are not always impressed with the reasonings of the courts on this question. Many of the decisions seem to follow form rather than substance and to adhere to precedents solely because they are precedents, forgetting that when the reason on which a rule of law is based changes the law itself changes with it. [State v. Vanhook, 88 Mo. 105.]

The very frequency with which this question comes before the appellate courts, as well as our limited experience with the practice in trial courts, shows that the matter of arraignment and entering a plea has

ceased to be a matter of importance and is at most a mere formality in the trial of criminal cases. It is generally purely a matter of afterthought on behalf of both the court and counsel who tried the case. We are fully satisfied that the error complained of did not in the least prejudice any substantial right of the defendants and as the facts are such that we are not bound by any decision of the Supreme Court, we approve the action of the trial court and affirm the judgment.

*Robertson, P. J.*, concurs. *Farrington, J.*, dissents and files separate opinion.

## DISSENTING OPINION

FARRINGTON, J.—I am unable to concur in that part of the foregoing opinion which holds that the absence from the record of an entry showing an arraignment and plea is not reversible error.

Section 5165, Revised Statutes 1909, specially provides that there shall be an entry of not guilty either in case of an indictment or information where the defendant fails to plead not guilty. It has been held that *there is no trial to be had until an issue is made.* [State v. Montgomery, 63 Mo. l. c. 299; State v. Saunders, 53 Mo. l. c. 237.]

The writer is not unmindful of the decisions of this and other courts holding that in drawing indictments in cases of minor offenses the same nicety is not required as in charging felonies (State v. Seiberling, 143 Mo. App. l. c. 321, 127 S. W. 106; State v. Hogle, 156 Mo. App. 367, 137 S. W. 21; State v. Fletcher, 18 Mo. l. c. 427; State v. Nelson, 19 Mo. l. c. 396); nor of the decisions of this and other courts holding that in misdemeanor as well as felony cases a plea of not guilty is not withdrawn by filing a motion to quash the information, and that on the overruling of the motion, a rearraignment is unnecessary (State v. Zimmerman, 139 Mo. App. 304, 123 S. W. 67; State v. Weyland, 142 Mo. App. 55, 125 S. W.

213; State v. Meagher, 49 Mo. App. l. c. 574, 575); and it is apparent that there is a tendency in these decisions to lower the standard of strictness in certain particulars in misdemeanor cases, as is said in the majority opinion. But this tendency, when it encounters the question of arraignment and plea—even in misdemeanor cases—is, according to my view, met with an array of judicial decisions which entirely deny its application.

Our Supreme Court has decided some misdemeanor cases, holding that an omission of the record to show an arraignment and plea is fatal. Witness: State v. Koerner, 51 Mo. 174; State v. West, 84 Mo. 440; Meader v. State, 11 Mo. 363; State v. Andrews, 27 Mo. l. c. 268. In State v. Hopper, 142 Mo. l. c. 481, 44 S. W. 272, the Supreme Court said: "The rule announced by this court is that a judgment of conviction *in a criminal case* will be reversed, when it appears that the defendant was not arraigned before he was put upon his trial." (Italics are ours.) The Courts of Appeals have spoken in no uncertain tone. Thus, in State v. Geiger, 45 Mo. App. l. c. 113, it is said: "That it is absolutely essential, even in a prosecution for a misdemeanor, that it should affirmatively appear by the record that there has been an arraignment and plea preceding a trial, has been frequently decided. Judgments have been reversed because the record failed to show this fact, although the defendant went to trial upon the merits." And in State v. Mikel, 125 Mo. App. l. c. 289, 102 S. W. 19, a misdemeanor case: "The transcript fails to show that defendant was arraigned or that any plea was made to the indictment. This is a fatal defect. It is just as necessary in misdemeanor as in felony cases that the record should show these facts affirmatively. Until the defendant is arraigned and enters his plea, there are no issues to try and submit to the jury. Without these things being done, there can be no trial, and, as defendant has not been accorded a legal trial, it is imma-

terial whether he made the point in his motion for new trial or in arrest of judgment. It may be raised for the first time in the appellate court." The same principle is forcibly reiterated in State v. Moss, 164 Mo. App. l. c. 381, 144 S. W. 1109. There are other misdemeanor cases to the same effect: State v. Ambrose, 125 Mo. App. 464, 102 S. W. 590; State v. Hubbell, 55 Mo. App. 262; State v. Grassle, 74 Mo. App. l. c. 317.

There had been no arraignment and plea before the jury was sworn in the case before us; hence, under the authorities cited, there was no issue framed *and there could be no trial.* This being true, the fact that the record shows that defendants' attorney, after the jury was sworn and after the information had been read to the jury and the prosecuting attorney's opening statement made, upon being addressed by the judge, replied: "No statement at this time except we plead not guilty," is of no consequence whatever; *the proceeding was a nullity,* and was not more binding merely because it had for its setting the circuit court room. It should be remembered, also, that there is both arraignment and plea. The arraignment is the call of the defendant to the bar for the purpose of completely identifying him as the person named in the indictment or information and to answer the charge against him. His answer makes the issue. Where the record shows that defendant pleaded "not guilty" to the charge, he is held to have waived formal arraignment. [State v. Weeden, 133 Mo. l. c. 80, 34 S. W. 473.] But here there was neither arraignment nor plea. The Supreme Court has recently used this language—in a felony case, it is true: "The arraignment of a defendant upon a *criminal charge* is so indispensable a prerequisite to a legal trial under our law that, as appellant states, it is unnecessary to cite authorities in support of the proposition." (Italics are ours.) [State v. Witherspoon, 231 Mo. l. c. 715, 133 S. W. 323.]

The arraignment and entry of the plea are said to be a mere formality; but they are nevertheless prescribed by legislative enactment and are upheld by numerous decisions of the appellate courts of this State.   That an indictment or information be in writing may be said to be a mere formality; that the requisite number of jurors shall sit, is, in one sense, formal; that the State shall open and close, and that the witnesses shall be sworn, bear the semblance of formality; indeed, if a man is guilty of a crime, the entire trial from arraignment to sentence is made up of one such "formality" after another—nothing is *substantial*— and to abolish one of these formalities in the trial of one whom we consider guilty will surely weaken the whole fabric of criminal practice under the Constitution, and that which we have clung to and called the rights of men will be banished forever from the courts. So, where the prosecuting attorney, the jury, the trial judge and the appellate court become convinced that the accused is guilty of the offense charged, any particular formality which was omitted in that particular trial may be said to be waived in that case and yet not prejudice the substantial rights of a guilty defendant. It has always been the policy of the law to devise general rules to cover classes of cases rather than to set up a myriad of rules for application in particular cases. It is my opinion that our courts have gone quite far enough—even in misdemeanor cases—under the present state of the law, and I exercise my privilege to pause. The course proposed is not in keeping with the precepts of our forefathers in the law, precepts that have found place in the fundamental laws and customs of a people who boast of freedom, liberty and private rights; and yet it is sought to invoke a rule against these defendants, which, had they lived and been tried two centuries ago, would have been held to be an unwarranted denial of their liberty.   The appellate courts are not called upon nor intrusted with the power to

determine from the record the guilt or innocence of accused persons, their function being merely to decide whether the trial was had according to the prescribed laws of this State.

The relegation of many of the technical and sharper points in the practice of the law, affecting civil and particularly criminal cases, is felt to be much needed by the bench and bar. The change is taking place in those respects where it is possible for the legal profession to effect a change; and the fact that it is coming about gradually and not convulsively argues strongly for the sound judgment of its members, for one extreme would be attended with as many evils as the other. But for many of the changes resort must be had to the forum in which the judiciary has no vote, which is the legislative branch of our government. It is my opinion that the stability of the law will be better preserved by the courts following faithfully the mandates of the lawmaking power until they are amended or repealed than by refining and explaining away their substance in a particular case against a guilty defendant. This judgment should be reversed and the cause remanded for a new trial in order that justice may be administered in accordance with the established rules of law.

FARRINGTON, J.—Deeming the decision herein contrary to the previous decisions of the Supreme Court in the cases of State v. Koerner, 51 Mo. 174; State v. West, 84 Mo. 440; Maeder v. State, 11 Mo. 363; State v. Andrews, 27 Mo. 1. c. 268; State v. Hopper, 142 Mo. 1. c. 481, 44 S. W. 272; State v. Witherspoon, 231 Mo. 1. c. 715, 133 S. W. 323; State v. Montgomery, 63 Mo. 1. c. 299; and State v. Saunders, 53 Mo. 1. c. 237, and contrary to the decisions of the St. Louis Court of Appeals in the cases of State v. Geiger, 45 Mo. App. 1. c. 113, and State v. Moss, 164 Mo. App. 1. c. 381, 144 S. W. 1109, and of the Kansas City Court

of Appeals in the case of State v. Mikel, 125 Mo. App. l. c. 289, 102 S. W. 19, I ask that this cause be certified and transferred to the Supreme Court in accordance with section 6 article VI of the Constitution of Missouri as amended in 1884.

PER CURIAM.—One of the judges of this court having of record requested that this cause be certified and transferred to the Supreme Court in accordance with section 6 of article VI of the Constitution of Missouri as amended in 1884, it is accordingly so ordered.